Argued June 3, reversed and remanded September 30, argued on rehearing December 9, 1964, former opinion modified January 27, 1965

## STATE OF OREGON v. NEELY

395 P. 2d 557
398 P. 2d 482

*Howard R. Lonergan,* Portland, argued the cause and filed briefs for appellant.

*Charles J. Merten,* Portland, argued the cause for respondent. On the brief were George Van Hoomissen, District Attorney, Portland, and Gerald R. Pullen, Deputy District Attorney, Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN,

PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

DENECKE, J.

The defendant was convicted of the crime of statutory rape upon a stepdaughter. ORS 163.220. He appeals upon the ground that he was deprived of constitutional rights guaranteed to him by the "due process" clause of the Fourteenth Amendment of the United States Constitution. He alleges that his oral and written confessions were inadmissible because they were obtained prior to his having been taken before a magistrate, and before he had been afforded the assistance of counsel.

Sometime between 3:30 and 4:00, p.m., two deputy sheriffs arrested the defendant at his place of employment. The arrest was pursuant to a warrant of arrest for the crime of statutory rape. There is a conflict in the evidence as to whether or not the defendant was informed that he had been placed under arrest. At approximately 4:15, p.m., after he had showered and changed his clothes, the defendant, accompanied by the two officers, left the plant and proceeded to the sheriff's office in Gresham. They arrived at the sheriff's office at approximately 4:35, p.m.

The officers questioned the defendant for about an hour, and at 5:45, p.m., they began to take down the statement in which the defendant confessed the crime. After the defendant had read and signed the statement, he was taken to Rocky Butte Jail, where he was booked at 7:20, p.m., the same evening. Later that evening, he was released on bail.

On the issue of whether or not defendant was advised of his right to counsel, the testimony of Officer

Dow, one of the interrogating officers, is ambiguous. The officer is clear that defendant asked about his right to counsel. However, the officer's further testimony is susceptible to two interpretations: (1) that, prior to the confession being made, the defendant asked whether he had a right to counsel and was informed by the officer that after the interrogation the defendant would be entitled to counsel, or (2) after the confession was made, the defendant asked about counsel and was advised he was entitled to counsel. Under either interpretation he was not informed prior to making the confession that he was entitled to counsel prior to interrogation.

Officer Graven, the other interrogator, testified there was a telephone available and the defendant could have used it at any time to call an attorney. Officer Graven did not talk to the defendant about defendant's right to counsel because, according to this officer, the defendant wanted to come in and plead guilty and see if he could get probation.

Defendant testified that he was never informed and did not know he was under arrest until after he had signed the confession. He stated that the officers told him that his wife brought in his stepdaughter and she made a written statement accusing defendant of the crime; that the officers said they wanted a statement from defendant for the divorce proceeding which was then pending between defendant and his wife; and that once his wife got the divorce the matter would be forgotten. Defendant stated that the officers never asked him if he wanted an attorney and, with the belief that he was not arrested nor in danger of a criminal prosecution, he did not think he needed one.

There is no evidence whether or not he was told that he did not have to make any statement or that

such a statement could be used against him. The defendant's testimony creates an inference that he was not so advised.

There is no evidence that the defendant was coerced into making the confession. Although there is some evidence from which it might be possible to conclude that the confession was obtained by trickery, defense counsel has never so contended.

The defendant testified that he can probably write as well as the police officers. He had been earning between $5,000 and $7,000 per year. After he was jailed, he retained his own attorney.

Under our past decisions the admission of defendant's confession would not be violative of his rights. *State v. Nunn*, 212 Or 546, 553, 321 P2d 356 (1958). However, recently, the Supreme Court of the United States has decided several cases stating that the presence or absence of certain circumstances renders the confession constitutionally inadmissible.

The most recent of these decisions is *Escobedo v. Illinois*, 378 US 478, 84 S Ct 1758, 12 L ed2d 977 (June 1964). In that case the defendant had been arrested, interrogated, and released upon the issuance of a writ of habeas corpus obtained by his attorney. Approximately 11 days later he was again arrested and brought to jail between 8:00 and 9:00, p.m. He asked to see his attorney, and his attorney asked to see his client. Both requests were denied. Defendant was not advised of his constitutional rights. Although it is not known how long he was interrogated, it is known that certain damaging admissions were obtained during the interrogation. Because these admissions, made without the assistance of counsel, were held to be admitted in violation of defendant's right to counsel as guaran-

teed by the Fourteenth Amendment, defendant's state conviction was reversed.

The essence of the majority's decision is:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' * * *." 12 L ed2d at 986

Neely did not request the assistance of counsel; therefore, one of the critical facts present in the *Escobedo* case is absent here. Whether such a request is necessary before an accused can successfully contend he was deprived of his right to counsel we do not now need to decide.

In the previously-quoted statement of the crucial elements in the *Escobedo* decision, the fact that the defendant had not been informed of his right to remain silent was specifically stated. The majority reiterated that fact in other portions of its opinion and partially distinguished *Crooker v. California,* 357 US 433, 78 S Ct 1287, 2 L ed2d 1448 (1958), as follows:

"* * * Among the critical circumstances which distinguish that case [Crooker v. California] from this one are that the petitioner there, but not here, was explicitly advised by the police of his constitutional right to remain silent, and not to 'say

anything' in response to the questions,   \*  \*  \*." 12 L ed2d at 986

Mr. Justice White, and the two justices joining in his dissent, at least in part, agree with this part of the majority opinion. Mr. Justice White writes:

"The Court may be concerned with a narrower matter: the unknowing defendant who responds to police questioning because he mistakenly believes that he must and that his admissions will not be used against him. But this worry hardly calls for the broadside the Court has now fired. The failure to inform an accused that he need not answer and that his answers may be used against him is very relevant indeed to whether the disclosures are compelled. Cases in this Court, to say the least, have never placed a premium on ignorance of constitutional rights. If an accused is told he must answer and did not know better, it would be very doubtful that the resulting admissions could be used against him. When the accused has not been informed of his rights at all the Court characteristically and properly looks very closely at the surrounding circumstances. See Ward v Texas, 316 US 547, 86 L ed 1663, 62 S Ct 1139; Haley v Ohio, 332 US 596, 92 L ed 224, 68 S Ct 302; Payne v Arkansas, 356 US 560, 2 L ed2d 975, 78 S Ct 844. I would continue to do so. But in this case Danny Escobedo knew full well that he need not answer and knew full well that his lawyer had advised him not to answer." 12 L ed2d at 991

In the three cases cited by the dissent the failure to advise the accused of his right to be silent was only one part of the "totality of the circumstances."

None of the opinions in *Escobedo* discuss the origin of the proposition that the right to remain silent at a police interrogation is a federal constitutional right, nor from which specific section of the Bill of Rights

(other than the Fourteenth Amendment) such a right is derived. All the opinions assume that it is a federal constitutional right.

*Malloy v. Hogan,* 378 US 1, 84 S Ct 1489, 12 L ed2d 653 (June 1964), decided the week before *Escobedo,* stated:

> "* * * The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty, as held in Twining, for such silence." 12 L ed2d at 659

That decision held that the petitioner's constitutional right to be free from self-incrimination prevented a court from holding him in contempt for refusing to testify before a referee conducting an inquiry into alleged gambling. However, the court's discussion makes it clear that it is of the opinion that the right to remain silent in a police interrogation also derives from the Fifth Amendment right against self-incrimination. The majority admits that while this was the view expressed in *Bram v. United States,* 168 US 532, 18 S Ct 183, 42 L ed 568 (1897), the contrary had been later expressed in *Brown v. Mississippi,* 297 US 278, 56 S Ct 461, 80 L ed 682 (1936). See Beisel, Control Over Illegal Enforcement By the Law, 86 (1955), discussing *Bram v. United States,* supra.

■ The Oregon decisions excluding involuntary confessions have based the exclusion upon common-law rules of evidence, codified into an Oregon statute. ORS 136.540. *State v. Wintzingerode,* 9 Or 153, 160-165 (1881). We have never held that the Oregon constitutional prohibition against self-incrimination (Art

I, § 12) was the basis of this exclusionary rule and we need not determine that issue at this time. *Malloy v. Hogan,* supra, and *Escobedo* make the right to remain silent during a police interrogation a Fourteenth Amendment right derived from the Fifth Amendment of the Federal Constitution.

■ We conclude that the *Escobedo* decision requires that an accused be effectively warned of his constitutional right to remain silent and that if this is not affirmatively shown by the state, a confession obtained without such warning is inadmissible. Whether law enforcement officers must in addition advise an accused of his right to counsel and whether it is necessary that this advice be given by a magistrate we need not now decide.[①]

We have considered defendant's other contention that he cannot again be tried because he already has been once in jeopardy. On the basis of the record of the proceeding in the second attempt to try this matter, we find against defendant on this issue.

Reversed and remanded for a new trial.

**ON REHEARING**

---

[①] People v. Dorado, 40 Cal Rptr 264, 394 P2d 952 (Aug 1964), relying upon *Escobedo,* held that a confession was inadmissible because the interrogating officer had not advised the accused of his right to remain silent and his right to counsel.

*Howard R. Lonergan,* Portland, argued the cause and filed briefs for appellant.

*George Van Hoomissen,* District Attorney, and *George M. Joseph,* Deputy District Attorney, Portland, argued the cause for respondent on rehearing.

With them on the briefs was Gerald R. Pullen, Deputy District Attorney, Portland.

William F. Frye, Eugene, filed a brief for Oregon District Attorneys' Association as amicus curiae.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Lusk, Justices.

DENECKE, J.

The state petitioned for a rehearing and the Oregon District Attorneys' Association filed a brief in support of the petition. We granted the petition.

In our initial opinion we stated that there was no evidence that defendant had been advised that he did not have to make any statement. We concluded that *Escobedo v. Illinois,* 378 US 478, 84 S Ct. 1758, 12 L ed2d 977 (June 1964), requires that an accused be effectively warned of his constitutional right to remain silent and that if this is not affirmatively shown by the state, a confession obtained without such a warning is inadmissible. Therefore, we reversed and remanded the case.

It was called to our attention in the state's brief on the petition for rehearing that on the form on which defendant's confession was typewritten were the following printed words:

"* * * I make the following statement, of my own free will, without fear, threats, coercion, or promises of reward or immunity of any kind: *I know that I am not required to make any statement* and I know that any statement I make may be used against me in Criminal proceedings in Court. The following facts are true to the best of my knowledge: * * *." (Emphasis added.)

One of the officers testified that defendant read the statement thoroughly before signing it. It could be reasonably inferred that the officer was referring to the entire document. Defendant did not deny that he read the statement.

■ Under usual circumstances a person has notice or knowledge of what he has read or written; for example, a person reading a document headed "RE-LEASE" is held to have notice that the document was a release. *Broad v. Kelly's Olympian Co.*, 156 Or 216, 233, 66 P2d 485 (1937).

■ The circumstances under which a confession is obtained may weaken or destroy the inference of knowledge which ordinarily arises from the reading or writing of a statement. We do not find in this case, however, that they did destroy such inference.

The circumstances here were that the words, "I know that I am not required to make any statement," were readily understandable; defendant was a mature man, and, according to his testimony, able to write as well as the deputy sheriffs; the interrogation was short and no claim of coercion was made.

Circumstances frequently attendant upon a confession, including this one,—being charged with a serious crime, being brought to a police station, courthouse or jail, and being interrogated by law enforcement officers—may dull the understanding of what an accused has read or written. However, this defendant did not testify that he did not understand the printed statement in the confession.

Under the circumstances attendant upon the taking of this confession we hold that defendant had knowledge of his right to remain silent and, therefore, the confession was not inadmissible on that ground.

*Haley v. Ohio,* 332 US 596, 68 S Ct. 302, 92 L ed 224, 228 (1948), and *Haynes v. Washington,* 373 US 503, 83 S Ct 1336, 10 L ed2d 513, 520 (1963), are not to the contrary. In *Haley* the defendant was 15; he was interrogated by relays of police from midnight until 5:00 a.m. when he signed a confession. Under such circumstances the Court was of the opinion that defendant could not have appreciated the statement in the confession, "the law gives you the right to make this statement or not as you see fit." The Court, therefore, gave no weight to such recital.[1]

In *Haynes* the recital was that no threats or promises had been made. Defendant had been held incommunicado from 10:00 p.m. until he signed a confession at 2:00 p.m. the next day. During this period he had been questioned for two hours or more. He had repeatedly asked to call his wife and was told he could not do so until he signed a confession. The state contended that the statement in the confession that no threats or promises had been made was conclusive that the confession had been made voluntarily. The Court held that such statement was of doubtful probative value and made its own independent examination of the facts and found the confession coerced.

5. Defendant also contended that his confession was inadmissible because it was obtained without his first being advised of his constitutional right to the assistance of counsel. In our initial opinion we specifically did not decide this issue. We must now so decide.

The state admits that defendant was not advised,

---

[1] The prevailing opinion was by Mr. Justice Douglas, with three other Justices concurring, and reversed. Mr. Justice Frankfurter specially concurred in the decision to reverse.

prior to the making of the confession, of his right to counsel.

In *State v. Kristich,* 226 Or 240, 248, 359 P2d 1106 (1961), we expressly refused to follow the New York Court of Appeals decision "that it violates constitutional rights to question an accused after arrest when he asks for his attorney. *People v. DiBiasi,* 1960, 7 NY2d 544, 166 NE2d 825." We observed, however: "it is now clear that criminal convictions may be jeopardized on appeal by the failure to provide or permit access to counsel at preliminary stages of the criminal process as well as upon trial." (226 Or at 250). In *State v. Kristich,* supra, we held to the single, established test for the admissibility of confessions, i.e., was it given freely and voluntarily? Access to counsel was only a circumstance to be considered in determining the answer to this question.

In *Massiah v. United States,* 377 US 201, 84 S Ct 1199, 12 L ed2d 246 (May 1964), the United States Supreme Court gave new significance to the absence of counsel at the time incriminating statements are obtained by law enforcement officials. In *Massiah* the defendant had been indicted, had retained an attorney, and was released on bail. By means of an electronic listening device placed by law enforcement officers in an informer's car and a planned conversation by the informer with defendant while in the informer's car, incriminating admissions were obtained from defendant.

"* * * We hold that the petitioner was denied the basic protections of [the Sixth Amendment] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. * * *" 12 L ed2d at 250.

The opinion does not discuss the voluntariness of the statements. It cites with approval the decisions of the New York Court of Appeals which we refused to follow in *State v. Kristich,* supra.

Then in *Escobedo v. Illinois,* supra, the Court moved this constitutional right to the assistance of counsel to a stage in the criminal process earlier than the time of indictment. The Court held:

"The interrogation here was conducted before petitioner was formally indicted. But in the context of this case, that fact should make no difference. When petitioner requested, and was denied, an opportunity to consult with his lawyer, the investigation had ceased to be a general investigation of 'an unsolved crime.' * * * Petitioner had become the accused, and the purpose of the interrogation was to 'get him' to confess * * *.

"* * * * * *

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' * * *." 12 L ed2d at 982, 986.

The state admits, because of *Escobedo,* that if Neely had requested an opportunity to consult with his attorney and had been denied such request, his con-

fession would be inadmissible. *Escobedo* unequivocally holds that a suspect in Neely's situation has a Fourteenth Amendment right to the assistance of counsel. The decisive issue remaining, therefore, is whether the state had an obligation to inform defendant that he had a right to the assistance of counsel.

At the judicial stage of a criminal proceeding the state, through the court, has the obligation of advising a defendant of his right to the assistance of counsel. In the absence of an affirmative showing of such advice, any conviction is constitutionally erroneous. In *Carnley v. Cochran,* 369 US 506, 82 S Ct 884, 8 L ed2d 70 (1962), defendant was held entitled to the assistance of appointed counsel at trial. The trial record in that case did not show that the trial judge offered, or that defendant declined, counsel. The state high court held, therefore, that the defendant was presumed to have waived counsel. The United States Supreme Court commented upon this ruling:

> "* * * This might mean that the petitioner could have suffered no constitutional deprivation if he had not formally requested counsel, and that failure to make such a request is to be presumed unless the record shows the contrary. *But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request. * * *"* (Emphasis added.) 8 L ed2d at 75-76.

The conviction was reversed.

In *Doughty v. Sacks,* 175 Ohio St 46, 191 NE2d 727, 728 (1963), defendant "had discussed the retention of counsel [for trial] with his wife but never made any request to the court that counsel be appointed to represent him * * *." Distinguishing *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L ed2d 799, 93

ALR2d 733 (1963), upon the basis that no request for counsel was made by this defendant, the Ohio court denied the petition for habeas corpus. In a memorandum opinion, citing *Carnley v. Cochran,* supra, the United States Supreme Court reversed, sub nom *Doughty v. Maxwell,* 376 US 202, 84 S Ct 702, 11 L ed2d 650 (1964).

The state upon oral argument contended that a distinction should be made between the necessity of informing an accused of his right to counsel at the judicial stage of a criminal proceeding and prior thereto. The state acknowledged its obligation to inform an accused of his right to counsel at the judicial stage. The state contends it has no such obligation at the time of interrogation.[2] We cannot agree.

In *Escobedo* Mr. Justice Goldberg, writing for the majority, stated:

> "We have also learned the companion lesson of history that no system of criminal justice can, or should, survive if it comes to depend, for its continued effectiveness on the citizens' abdication through unawareness of their constitutional rights. No system worth preserving should have to *fear* that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise, these rights. * * *" 12 L ed2d 985.

Mr. Justice Goldberg was speaking of ignorance of one's right to be silent; however, ignorance of an accused's right to counsel cannot be treated differently.

---

[2] People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33 (Nov. 1964); Sturgis v. State, 235 Md 343, 201 A2d 681 (1964); Anderson v. State, 205 A2d 281 (Dec. 1964); and State v. Scanlon, 84 NJ Super 427, 202 A2d 448 (1964), appear to be in line with the state's contention. People v. Dorado, 40 Cal Rptr 264, 394 P2d 952 (Aug. 1964) (petition for rehearing pending); and Wright v. Dickson, 336 F2d 878 (9th Cir 1964), are contrary to the state's contention. Likewise, Commonwealth v. Coyle, 415 Pa 379, 203 A2d 782, 794 (Oct. 1964), appears to be contrary.

In *Escobedo v. Illinois,* supra, Mr. Justice White, dissenting with two other justices joining, was of the opinion that *Escobedo* was not restricted to cases in which the accused requested counsel:

"* * * Although the opinion purports to be limited to the facts of this case, it would be naive to think that the new constitutional right announced will depend upon whether the accused has retained his own counsel [Citing cases], *or has asked to consult with counsel in the course of interrogation.* Cf. Carnley v. Cochran, 369 US 506, 8 L ed 2d 70, 82 S Ct 884. * * *" (Emphasis added.) 12 L ed2d at 988-989.

Adoption of the distinction advanced by the state would lead to results contrary to the basic beliefs of the United States Supreme Court and of this court. Under the state's contention a suspect like Escobedo who has been previously jailed and, therefore, has previously needed the assistance of counsel, has a constitutional right to counsel because he knows through experience to demand counsel; however, a suspect who has never had any prior experience with the criminal process and, therefore, does not know by experience the assistance that a lawyer can give and, therefore, does not demand such assistance, has no constitutional right to counsel. If the state's distinction were accepted, we would grant the assistance of counsel to those educated enough to demand it and deny it to those too ignorant to ask for it. The United States Constitution demands equal treatment during the criminal process for the inexperienced and the uneducated.

■ We hold that the Sixth Amendment as made obligatory by the Fourteenth Amendment requires that before law enforcement officials can interrogate a person who is the focal suspect of a crime, such person

must effectively be informed of his right to assistance of counsel as well as his right to remain silent. In the absence of such knowledge an accused can in no way be deemed to have intelligently waived his constitutional rights, and in the absence of such waiver a confession obtained by such interrogation is inadmissible.

Former opinion modified; reversed and remanded.

PERRY, J., dissenting.

I am unable to agree with that portion of the majority opinion which holds that, in the absence of informing the prisoner of his right to assistance of counsel, this is a denial of a constitutional right that prevents the use of a confession obtained.

In my opinion, *Escobebo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L ed 2d 977, requires no such conclusion, nor do I believe that such a requirement would in a practical way protect any of the rights of an accused that should affect the admission of the confession if obtained without duress or fraud and voluntarily from the prisoner.

It should be noted that Mr. Justice Goldberg, writing for the majority in *Escobedo v. Illinois,* supra, commences the opinion with this statement:

"The critical question in this case is whether, *under the circumstances,* the refusal by the police to honor petitioner's request to consult with his lawyer during the course of an interrogation constitutes a denial of 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 US 335, 342, 9 L ed 2d 799, 804, 83 S Ct 792, 93 ALR2d 733, and thereby renders inadmissible

in a state criminal trial any incriminating statement elicited by the police during the interrogation." (Emphasis supplied)

As I understand this statement, the matter as decided was simply that if a request was made for counsel then to proceed would amount to the denial of a constitutional right and thus, because a constitutional right was denied, the statement elicited by the police cannot be used in the criminal trial, and the question of the voluntariness of the statement is foreclosed by reason of the denial. The majority opinion in *Escobedo* distinguishes *Crooker v. California,* 357 US 433, 78 S Ct 1287, 2 L ed 2d 1448, where there was a denial of request of counsel, on the basis that in the *Crooker* case and not in the *Escobedo* case the prisoner had been explicitly advised by the police of his constitutional right to remain silent and not to say anything in response to questions.

For myself, I am unable to discover as a matter of legal consequence what assistance at this time of accusation an honest lawyer could be to his client other than to keep reminding the prisoner of his right to remain silent.

There are no matters then being litigated wherein the assistance of counsel would prevent fair play if the prisoner has been effectively warned of his constitutional right to remain silent, for from then on all proceedings become evidentiary on the question of voluntariness of the statements.

The logical result of the majority opinion is simply to require that the public furnish counsel to indigents prior to heretofore determined constitutional requirements, and, in my opinion, for no reasonable purpose.

*Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733.

For the above reasons, I dissent from that portion of the opinion which requires that police officers shall, prior to interrogation, inform a prisoner of his right to counsel or a constitutional right has been invaded.