Argued January 2, affirmed February 28, 1968

## STATE OF OREGON, *Respondent, v.*
## ALBERT JACKSON TAYLOR,
### *Appellant.*
437 P. 2d 853

*Oscar D. Howlett,* Portland, argued the cause and filed a brief for appellant.

*Thomas H. Denney,* Deputy District Attorney, Oregon City, argued the cause for respondent. With him on the brief was Roger Rook, District Attorney, Oregon City.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PERRY, C. J.

The defendant Albert Jackson Taylor was convicted of driving a motor vehicle while under the influence of intoxicating liquor, and appeals.

The defendant was involved in an automobile collision on highway 99-East. Defendant entered onto highway 99-East in the city of Milwaukie by way of an exit. The highway at this point is four lanes, two for the use of north-bound traffic, and two for the use of south-bound traffic. There is a divider-strip between the north and south-bound lanes. Defendant turned south in the north-bound lane and almost immediately collided with a north-bound vehicle. Both automobiles were severely damaged. The accident oc-

curred close to the headquarters of the state police. Officer Stewart heard the crash and drove immediately to the scene. The officer testified as follows:

"I asked him [defendant] if this was his car; he said 'yes.' I asked him if he were driving; he said 'yes.' I asked him where he was going; he said 'out to the highway.' I asked him when he left Portland; and he said 'at 3:30 p.m.' I asked him if he knew what time it was now; and he said '10:25 p.m.' I asked him if he had been drinking; and he said 'yes.' I asked him what he had been drinking; he said 'whiskey and beer.' I asked him how much he had been drinking; he said 'four to five beers and a couple of whiskies.' I asked him at this point where he had been drinking; and he said 'At the Jigsaw Tavern in Portland.' I asked him when he started drinking; he said '11:30 a.m.' that morning. I asked him if he knew where he was at; and he didn't know. I asked him if he had been to a doctor or dentist recently; he said 'no.' I asked him if he was taking insulin or any other medicine; he said 'no.' I asked him if he were ill; he said 'no.' and I asked him if he was injured; and he said 'no.'"

At this time the officer noticed that the defendant gave his answers in "a kind of a closed-mouth muble [sic], sort of a slurring-type answer," and he "observed that his eyes were watery and dialated [sic] * * *, he couldn't maintain balance in one position without taking a side step to maintain his balance."

Subsequent to the interview above set out, the officer advised the defendant he was arresting him for driving while under the influence of intoxicating liquor and notified him of his right to remain silent and his right to counsel. The officer also testified that had the defendant attempted to leave he would not have permitted him to do so until he had completed his investigation.

Defendant objected to the officer testifying to any of the conversation between the officer and defendant on the grounds that defendant's federal constitutional rights under the Fifth and Sixth Amendments had been invaded, and assigns as error the trial court's denial of his motion. Defendant relies upon *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L ed 2d 694; *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L ed 2d 977; *State v. Ottman,* 242 Or 190, 408 P2d 211; *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482.

It will be noted that each of the above-cited cases deal with "custodial interrogation." The thrust of each is the danger of *compulsory* self-incrimination that arises out of the pyschological effect of the custodial atmosphere which tends to overpower the mental resistance of a suspect or an accused when questioned. *Miranda* states "that without proper safeguards the process of *in-custody* interrogation of persons suspected or accused of crime *contains inherently compelling pressures* which work to undermine the individual's will to resist and *to compel him to speak where he would not otherwise do so freely."* (Emphasis supplied.) 384 US 436, 467.

■ There is nothing in any of these decisions that denies the police the right in on-the-scene investigations to interview any person not in custody and not subject to coercion in any form for the purpose of determining whether a crime has been committed and who committed it.

"* * * General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement.

In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." *Miranda v. Arizona,* supra, 384 US 436, 477-478.

Nor is there otherwise an iota of evidence that the statements made by the defendant were in anywise the result of compulsion.

In the matter before us, the officer was in the performance of a duty to investigate this accident and its cause. In determining its cause, he was required to determine in a preliminary way whether the cause was due to violation of law and, if so, whether there was reasonable cause to cite the defendant for that violation. This information is necessary in any case before an officer is justified in placing a person under arrest. Moreover, as stated in *Hoffa v. United States,* 385 US 293, 310, 87 S Ct 408, 17 L ed 2d 374, 386:

"* * * Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

■ In the case at bar the officer asked more questions than the minimum necessary to establish probable cause, but as soon as he concluded that an arrest should be made he stopped the questioning and advised the defendant of his rights. No questions were asked after the defendant was arrested. Under these circumstances, we hold that the officer's investigation did not produce inadmissible evidence under the *Miranda* rule.

■ The defendant also assigns as error the trial court's instruction:

"You are instructed that a statement which ad-

mits guilt is prima facie involuntary and imposes the burden of the State of showing beyond a reasonable doubt that it was not the result of force or improper coercion and that it was made voluntarily."

Under the facts of this case, this instruction was abstract and should not have been given. The statements made to the police officer were evidence of guilt, but they did not constitute an admission of the offense charged.

While the instruction may have left an impression with the jury that defendant's admission—that he had been drinking and was the operator of the automobile—could be treated as a confession of guilt, we are of the opinion that when the instruction is considered in conjunction with all of the instructions, the jury could not have been so misled that the instruction would constitute prejudicial error.

The judgment is affirmed.