Argued September 28, affirmed, November 16, 1970

STATE OF OREGON, *Respondent, v.*
WILLIAM D. SMITH, *Appellant.*

476 P2d 802

*Adelbert G. Closterman*, Portland, argued the cause and filed the brief for appellant.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and BRANCHFIELD, Judges.

SCHWAB, C. J.

Upon trial by jury defendant was convicted of driving while under the influence of intoxicating liquor. ORS 483.992 (2). At the trial the defendant admitted that he was drunk at the time in question, but claimed that he was a passenger, and not the driver of the automobile. Over his objection, his admission (made to the arresting officer immediately following the arrest) that he was, in fact, driving, was admitted into evidence. His objection, in essence, was that he was too drunk to understand the *Miranda* advice given him by the arresting officer and that, therefore, his waiver of his *Miranda* rights by answering the officer's questions was not a voluntary, knowing and intelligent waiver. This is the principal issue on appeal.

Shortly before 9 p.m. on August 28, 1969, the Multnomah County sheriff's office was notified that an automobile had crashed into a utility pole. Sheriff's officers responded to the call, and arriving at the scene found the defendant stretched across the front seat of

the automobile. After ascertaining that the defendant was intoxicated, but not seriously injured, deputy sheriff LaBerge assisted the defendant to the prowl car, placed him under arrest, advised him, in the now traditional form, of his right to counsel and right to remain silent, and then questioned him.

At trial the defendant's position was that he had not been driving; that because he knew he was drunk he had asked an acquaintance to drive the automobile; that the acquaintance was driving the vehicle at the time of the crash; and that the reason the driver was not at the scene at the time the officers arrived was that he had gone for help. The evidence produced in support of defendant's position was strongly controverted by other evidence. Nevertheless, the evidence was sufficient to make a jury question as to who was driving.

■ While *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966), deals with a custodial, station-house interrogation, it has been construed to govern all custodial interrogation by police and, in effect, renders admissions and confessions of criminal defendants inadmissible in the absence of proof, not only that the appropriate advice of rights was given, but that the advice was understood and the waiver of the rights embodied in the advice was voluntary, knowing and intelligent. 384 US, supra, at 444.[①]

---

[①] In State v. Taylor, 249 Or 268, 437 P2d 853 (1968), the police arrived at the scene of an accident and in the course of questioning Taylor obtained certain damaging information from him which led to his conviction of drunken driving. There, at the time the admissions were made by Taylor, the police had not taken Taylor into custody, but were merely investigating. The court held that the statements of the defendant, Taylor, were admissible even

When the defendant objected to the introduction into evidence of his admission to deputy LaBerge that he had been driving his automobile, the trial court conducted a hearing out of the presence of the jury in the form prescribed by *State v. Brewton*, 238 Or 590, 395 P2d 874 (1964). The hearing consisted of testimony from deputy LaBerge. Deputy LaBerge was asked by the court whether or not the defendant was so intoxicated that he could not have understood what was being read to him (the *Miranda* advice). Deputy LaBerge candidly replied that it was a difficult question to answer, but, that in his opinion, although the defendant Smith was intoxicated, he understood what was going on.

The record is not clear as to whether the alcoholic report prepared by the officer shortly after the arrest was read by the trial judge in the course of the hearing on admissibility. This report, signed by deputy LaBerge, which was later introduced into evidence, contains the following information relevant to objective indications of the degree of intoxication:

"BREATH: Odor of alcoholic liquor: strong.

---

though they were not preceded by *Miranda* advice, quoting from that portion of Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966), which says:

"'* * * General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.'" 249 Or at 271-72.

The case at hand is not analogous, because here the defendant had been placed under arrest prior to making the damaging admissions. We note this distinction so that our opinion here will not in any way be considered as narrowly construing the holding of State v. Taylor, supra.

"CLOTHES: Mussed, soiled, urine on trousers.
"EYES: Watery, Bloodshot.
"PUPILS: Dilated.
"WALK & TURNING: Staggering.
"SPEECH: Slurred, Incoherent.
Choice of words and correctness of speech: poor.
Effects of alcohol: Extreme."

■ The fact that an individual has been drinking, or even the fact that he has been drinking to the extent that he is under the influence of intoxicants, does not necessarily mean that he cannot understand advice and cannot be bound by his subsequent conduct in electing to waive the rights of which he is advised. However, if by reason of *extreme* intoxication a confession cannot be said to be the product of a rational intellect and a free will, it is not admissible. *State v. Lowry*, 245 Or 565, 423 P2d 172 (1967); *Collins v. Sullivan*, Civil No. 69-550 (D Ore, filed Oct. 15, 1970); *Gladden v. Unsworth*, 396 F2d 373, 380 (9th Cir 1968). Here the trial judge recognized the problem, saying in the course of the hearing:

"* * * The question that disturbs me is * * *. Whether or not he was in the position then to understand his Miranda rights * * *."

*Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), tells us that whether the historical facts as found are sufficient to sustain a finding of voluntariness which meets state and federal constitutional concepts of due process is a question which falls within the scope of appellate review. As is pointed out in Childs IV, Intoxicated Confessions: A New Haven in Miranda?, 20 Stan L Rev 1269, 1278-79 (1968):

"* * * [T]he most certain inference that can be drawn from the available types of evidence is whether the defendant was heavily under the in-

fluence of alcohol or some other drug at the time he waived his rights and confessed; it is impossible to determine whether the state of intoxication was in fact a but-for cause of the confession, or whether some other standard of subjective mental capacity to incriminate oneself has been met * * *. [T]he difficulty of determining, apart from evidence of serious intoxication, whether the defendant did in fact have sufficient mental capacity to make a binding confession may render an objective standard the only workable test. A test of subjective capacity would make legal consequences of confession turn on highly dubious and difficult to determine facts; the results would be a partial return to the burdensome case-by-case adjudications that *Miranda* was intended to end."

See also *State v. McFall*, 5 Ariz App 539, 544, 428 P2d 1013, 1018 (1967), vacated 103 Ariz 234, 439 P2d 805 (1968), a case in which a confession was made under the influence of drugs. The court was concerned with the kind of investigation of the defendant's mental state that should have been made by the trial court to determine whether the confession satisfied constitutional requirements. The court said:

"There have been great thinkers * * * who have proved to their satisfaction that all events are predestined * * *. The degree to which this particular defendant's willingness to confess might have been affected by the fact that he was 'strung out' is a subject, upon which we have no doubt, psychiatrists, psychologists, philosophers and drug users might expound at great length, but, as we conceive it, with little final good being achieved insofar as the administration of justice is concerned."[2]

[2] The Arizona Supreme Court vacated the opinion of the Arizona Court of Appeals in State v. McFall, 5 Ariz App 539, 428 P2d 1013 (1967), on the grounds that the police had not presented

■ The sum total of the evidence adduced at the hearing objectively indicated that the defendant was in a state of extreme intoxication, and if this were the only evidence we had before us we would be hard put to find that his waiver of his rights was voluntary, knowing and intelligent. However, subsequent to the hearing defendant took the stand and testified in his own defense.

In the course of such testimony he described with clarity and precision, not only the physical events surrounding the accident, but also in great detail his version of the conversations with his alleged driver. He did not testify that he did not recall what the officers told him, but, rather, he denied that he had admitted driving to deputy LaBerge and then proceeded to testify in detail as to his version of the conversations between him and deputy LaBerge. We thus have out of the defendant's own mouth testimony which satisfies us that at the time of his arrest he was capable of comprehending and understanding the English language and possessed the ability to reason. In *Unsworth v.*

---

sufficient evidence to overcome the defendant-addict's allegation that the police had used an implied promise to extract a confession when they told the defendant that they would discuss the matter of giving the defendant drugs after the defendant answered their questions. The court did not base its decision on a subjective appraisal of the defendant's ability to endure interrogation under withdrawal conditions. The court reiterated that the trial judge should use an objective standard in determining whether a confession was made voluntarily.

"* * * We are constrained to say that a trial judge can only meaningfully implement the decision in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, at the state level if he realistically and objectively appraises the possible compulsive circumstances surrounding the procurement of a confession * * *." 103 Ariz 234, 237, 439 P2d 805 (1968).

*Gladden*, 261 F Supp 897, 901 (D Ore, 1966), a case which involved an intoxicated defendant, the court said:

"I do not share the view that since Unsworth testified substantially in accord with his written statement, the statement was admissible regardless of whether he had been afforded his constitutional rights. Had Unsworth received a hearing outside the presence of the jury on the voluntariness of the oral and written statements, the State may have been unable to make a prima facie case, and it would have been unnecessary for Unsworth to have taken the stand."

The situation here is not analogous. Here we have ample circumstantial evidence other than Smith's testimony that Smith was driving. Furthermore, Smith did not testify in accordance with his admissions to the police—he testified to the contrary. We consider his testimony as demonstrating that he was not, at the time he made his damaging admission, so benumbed or confused by alcohol that he had no understanding or realization of what was going on or what he was saying.

There are five other assignments of error, all dealing with requested instructions. These assignments lack sufficient merit to warrant discussion.

Affirmed.