Submitted on briefs April 15, affirmed May 28, 1971

STATE OF OREGON, *Respondent, v.*
JAMES FRANK BROWN, *Appellant.*

485 P2d 444

Ronald L. Salter, Ashland, for appellant.

Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem, for respondent.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

The Circuit Court of Jackson County found defendant guilty of driving a motor vehicle while under the influence of intoxicating liquor in violation of ORS 483.992 (2).

He appeals contending that the lower court erred (1) in permitting the arresting officer to testify as to replies made to the officer's inquiries *before* defendant was advised of his constitutional rights; (2) in receiving in evidence statements made *after* he was advised of his rights, because the same were tainted by his prior inadmissible statements; and (3) because the commission of the crime charged was not established to a moral certainty and to the exclusion of every other reasonable hypothesis before defendant's admissions were received into evidence.

At about 11 p.m. on the night of November 4, 1969, two state police officers on routine motor patrol found the defendant slumped over the wheel of an automobile which was parked alongside the main travel portion of Interstate Highway 5 south of Medford. The engine was stopped, the lights were off, but the hood was warm. The senior officer tapped on the

car windows but could not arouse defendant. He opened the door and assisted defendant out of the car. Defendant when asked if he knew where he was replied, "California." The officer testified that he walked the defendant back and forth for five or ten minutes because he did not think defendant realized what was happening. He noticed what appeared to be vomit on the defendant's shirt, detected the odor of alcohol, noticed defendant's eyes were bloodshot and that his speech was slurred and incoherent. Immediately thereafter the defendant was asked the following series of questions from what was identified by the officer as "Form 42":

"I asked 'Where were you going?' He stated 'Home.' 'Q. Where did you start? A. In Oregon. Q. When did you leave? A. A little before 11:00 p.m. Q. The time now?' And he stated he thought it was 11:05 p.m. I asked him had he been drinking, and he said 'Yes.' 'Q. What? A. Beer. Q. Quantity? A. Eight to ten. Q. Commenced? A. 3:00 to 4:00 p.m. Q. Where? A. At Hunter's and the 100 Club.' I asked him 'Are you ill? A. No. Q. Have you been to a doctor or dentist recently? A. No. Q. Are you taking medicine? A. No. Q. Do you have diabetes? A. No. Q. Are you taking insulin? A. No. Q. Have you used a mouthwash recently? A. No. Q. Are you hurt? A. No.' "

The officer testified the defendant was more alert after being questioned. He stated that he did not form an opinion that defendant was under the influence of intoxicating liquor until he ascertained through the questionnaire that defendant was not a diabetic. After being asked the questions from "Form 42" the defendant was warned of his constitutional rights, placed under arrest, put in the police vehicle and transported to the county jail. The senior officer

testified that en route defendant made the statement that he was too drunk to drive, that he was having trouble seeing the road so he pulled over and parked. A breathalyzer test at the county jail disclosed defendant's blood alcohol content to be .13 percent. A motion picture taken of defendant shortly after he was booked showed him to be visibly unsteady on his feet.

■ Defendant's contention under assignment No. 1 with reference to police questioning prior to advising the defendant of his rights is essentially the same contention considered in *State v. Taylor*, 249 Or 268, 437 P2d 853 (1968). *Taylor* involved an automobile collision near Milwaukie State Police headquarters. The arresting officer heard the crash and immediately drove to the scene where he saw the defendant. He asked him a series of questions in relation to his driving and drinking substantially identical to those asked in the instant case. The defendant gave several incriminating answers. The officer noticed that defendant's speech was slurred, his eyes were dilated and he had trouble maintaining his balance. The officer then advised defendant of his rights and placed him under arrest for driving under the influence of intoxicating liquor. Our Supreme Court held that the officer's questions were part of a general "on-the-scene" investigation and constitutionally permissible under *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed2d 694, 10 ALR3d 974 (1966); *Escobedo v. Illinois*, 378 US 478, 84 S Ct 1758, 12 L Ed2d 977 (1964); *State v. Neely*, 239 Or 487, 395 P2d 557, 398 P2d 482 (1965).[①]

---

[①] Subsequent to Miranda v. Arizona, supra, the United States Supreme Court in Orozco v. Texas, 394 US 324, 89 S Ct 1095, 22 L Ed2d 311 (1969), set aside a murder conviction because of a

While there are several factual differences between *Taylor* and the instant case, the rule laid down is applicable and controlling here. Such being the case, both of the defendant's first two assignments must fail.

■ As we understand defendant's third assignment of error, he is contending that proof of the element of "driving on a public highway" in the offense of driving while under the influence of intoxicating liquor cannot be inferred from "merely finding the defendant in a car that is parked at night with its lights and engine off." He is also contending that commission of the crime charged was not established to a moral certainty and to the exclusion of every other reasonable hypothesis before defendant's admissions were received in evidence. These contentions are without merit. The officers found defendant slumped behind the wheel of a car parked alongside the highway. In addition the record shows that the keys were in the ignition and there was no other person in the vicinity. The officers testified that the hood of the car was still warm. This was sufficient evidence, apart from defendant's admissions, from which a court or jury could infer beyond a reasonable doubt that the defendant had driven the automobile on a public highway to the place where it was parked shortly before the officers arrived on the scene. See *State v. William D. Smith,* 4 Or App 130, 476 P2d 802 (1970).

---

police officer's failure to give the warnings required by *Miranda* prior to obtaining admissions from defendant during questioning in defendant's boarding house bedroom in the early hours of the morning. Testimony of defendant's admissions was later introduced at trial. The court said that it is an absolute necessity for officers interrogating people "in custody" to give the warnings required by *Miranda.*

The Oregon statute specifying the conditions under which a peace officer is authorized to make an arrest of a person without a warrant reads:

"A peace officer may arrest a person without a warrant:

"* * * * *

"(3) When a felony has in fact been committed *or a major traffic offense, as defined in subsection (5) of ORS 484.010, has been committed, and he has reasonable cause for believing the person arrested to have committed it;* * * *.

"* * * * * *." ORS 133.310 (3) (Emphasis supplied.)

Driving while under the influence of intoxicating liquor is a major traffic offense as defined by ORS 484.010.

 Defendant also argues that the commission of the crime charged was not established to a moral certainty before defendant's incriminating answers to police inquiries were received in evidence. The order of proof is in the discretion of the trial judge. ORS 17.215; *State v. Clipston*, 237 Or 634, 645, 392 P2d 772 (1964); *State v. Weston*, 102 Or 102, 113-15, 201 P 1083 (1921).

The conviction is affirmed.