Argued February 19, affirmed March 29, reconsideration denied April 21, petition for review denied May 11, 1976

STATE OF OREGON, *Respondent,*

*v.*

JAMES EDMUND EGGER, *Appellant.*

(No. 16-164, CA 5175)

547 P2d 643

*Thomas A. Huffman,* Hillsboro, argued the cause for appellant. With him on the brief were Huffman and Zenger, Hillsboro.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

[ 927 ]

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

**FORT, J.**

Defendant was convicted by a jury of driving under the influence of intoxicating liquor. ORS 483.992(2). He appeals from the resulting judgment, assigning as sole error the denial of his motion to suppress evidence of statements made by him to the police at the time of the incident. We affirm.

Because of the erratic manner in which defendant was operating his vehicle, Officer Weber pulled him over. As it happened this was within a few blocks of defendant's home. There was evidence from which the court could find that after stopping defendant's automobile, Weber asked defendant for his operator's license, went back to his own automobile and obtained a tape recorder, returned to defendant's automobile, advised defendant that he would be taping their conversation, and asked defendant again for his license. It took defendant "quite some time" to find it. Weber testified that prior to placing defendant under arrest, he asked defendant to perform two field sobriety tests, asked defendant among other things whether he had any head, back or leg injuries, and whether he was taking any medication. Defendant refused to answer some questions and answered others in a somewhat belligerent manner. The defendant's eyes were blood-shot, his pupils dilated and his speech slurred. Early in his investigation the officer began tape recording his conversations with the defendant and headquarters. About the middle of the investigation and prior to the giving of certain field sobriety tests, while talking to headquarters he informed the office, "I have a drunk on my hands," requested a tow truck, and because of concern over the driver's "belligerent" manner, asked for backup help.[1] Based on the observed results of all the foregoing investigation the officer arrested him for the crime charged, put him in the police vehicle and then gave him the *Miranda* warnings.

---

[1] The court at the conclusion of the hearing ruled that the portion of the cassette quoted would not be submitted to the jury. No claim is here made that it was.

If we correctly understand defendant he contends none of the foregoing was admissible because he was not given the *Miranda* warnings at the beginning of the investigation nor at any time until after it was completed. He further contends that because the officer would not return his license to him after examining it despite defendant's demands for its immediate restoration, combined with the fact that the officer did not intend to let him go until he had completed the investigation, the interrogation was therefore custodial and thus within the *Miranda* rule because it was coercive in nature.

In *State v. Taylor,* 249 Or 268, 437 P2d 853 (1968), the court considered this question in connection with a prosecution on the identical charge here involved. In the course of its opinion, the court after citing *Miranda,* [2] *Escobedo,* [3] *Ottman* [4] and *Neely,* [5] all relied on by defendant here, said:

"It will be noted that each of the above-cited cases deal with 'custodial interrogation.' The thrust of each is the danger of *compulsory* self-incrimination that arises out of the psychological effect of the custodial atmosphere which tends to overpower the mental resistance of a suspect or an accused when questioned. *Miranda* states 'that without proper safeguards the process of *in-custody* interrogation of persons suspected or accused of crime *contains inherently compelling pressures* which work to undermine the individual's will to resist and *to compel him to speak where he would not otherwise do so freely.*' (Emphasis supplied.) 384 US 436, 467.

"There is nothing in any of these decisions that denies the police the right in on-the-scene investigations to interview any person not in custody and not subject to coercion in any form for the purpose of determining whether a crime has been committed and who committed it.

[2] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

[3] *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964).

[4] *State v. Ottman,* 242 Or 190, 408 P2d 211 (1965).

[5] *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482 (1965).

" '* * * General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.' *Miranda v. Arizona*, supra, 384 US 436, 477-478.

Nor is there otherwise an iota of evidence that the statements made by the defendant were in anywise the result of compulsion.

"In the matter before us, the officer was in the performance of a duty to investigate this accident and its cause. In determining its cause, he was required to determine in a preliminary way whether the cause was due to violation of law and, if so, whether there was reasonable cause to cite the defendant for that violation. This information is necessary in any case before an officer is justified in placing a person under arrest. * * *" 249 Or at 271-72.

To the same effect, see our recent opinion in *State v. Henson,* 23 Or App 234, 541 P2d 1085 (1975), Sup Ct *review denied* (1976).

Here the court found at the conclusion of the hearing:

"Based upon the evidence produced at this hearing, it is the finding of the Court that the Defendant was properly advised at the beginning that the conversation was going to be taped; and further, I would find that the officer had not yet placed him under arrest when he was making the preliminary inquiry, and that the nature of the interrogation of the Defendant was investigative; and I feel that this is very similar to *State vs. Taylor,* although we don't have an accident involved, and that the officer did seek only minimum amount of evidence, which would reach the level of probable cause; and, therefore, the tape will be received into evidence, during the trial of this cause."

Furthermore, there was direct evidence from the officer that he did not arrest the defendant before the

[ 931 ]

completion of the field sobriety tests because "I had to determine whether there would be any other conditions causing some of [defendant's] actions, other than alcohol * * * [such as] diabetes [or] injuries."

We conclude there was ample evidence to support the denial of the motion to suppress and to support the trial court's conclusion that the interrogation was an essential part of the prompt on-the-spot investigation required to be made by the officer concerning the reasons why defendant's car was being operated in the manner which the officer had just observed, that it was a reasonable prerequisite to his determination that there was probable cause to arrest the defendant for the crime charged, and that it was not, therefore, custodial in nature within the meaning of the *Miranda* rule.

Affirmed.