Argued and submitted August 2, affirmed;
remanded for resentencing December 8, 1982

## STATE OF OREGON,
*Respondent,*

*v.*

## ROBERTO AVILA CORONA,
*Appellant.*

(No. 81-07-2879-C, CA A23247)

655 P2d 216

Marilyn C. McManus, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his convictions for second degree manslaughter, ORS 163.125, third degree assault, ORS 163.165, failure to perform duties of a driver involved in an accident, ORS 483.602, and conspiracy. ORS 166.450. The third and fourth charges were merged for purposes of sentencing. The charges arose out of a hit-and-run accident in which a car defendant was driving hit a motorcycle, killing the motorcycle passenger and seriously injuring its operator. Defendant contends that statements he made should have been suppressed, because he was arrested as an illegal alien by state police without adequate authorization from federal authorities. Alternatively, he argues that the statements should have been suppressed because he was not adequately advised of his rights, did not understand his rights and did not voluntarily, knowingly and intelligently waive them. He also submits that his manslaughter and assault convictions should have been merged for sentencing. We affirm the convictions but remand for resentencing. Following the denial of defendant's motion to suppress he stipulated to the facts disclosed in the police reports.

At about 1 a.m. on July 29, 1981, defendant was driving a car that collided with a motorcycle. Jose Ruiz was a passenger in the car. The motorcycle passenger died as a result of the collision, and its operator suffered serious injuries. Immediately after the accident, defendant drove the car a short distance farther, and he and Ruiz removed the license plates and walked home.

The police officers investigating the accident followed a trail of fluid from skid marks at the scene of the accident to the car. One officer recognized the car, and he and another officer went to the residence where they believed its owners lived. There they found Jose Ruiz and Abelardo LaRuiz, whom an officer recognized as people he had previously seen in and around the car. Neither man spoke English. Through an interpreter obtained by the police department, Ruiz said that he had sold the car the day before to a person whose name he did not know. Both he and LaRuiz denied any knowledge of the accident, but they admitted that they were illegal aliens. A police officer

telephoned federal immigration authorities, who authorized them to take the two men into custody as illegal aliens. LaRuiz then told police that Ruiz had not sold the car and that Ruiz had left earlier that evening with defendant. The two men told them where defendant lived, and the police went to defendant's apartment and were admitted by another occupant. Defendant was in bed; the officer got him up and asked him to put on his shoes and come outside. The officer examined the shoes, concluded that the pattern on the soles was similar to that of footprints found near the abandoned vehicle and seized the shoes as evidence. Defendant, who does not speak English, was then taken outside and advised of his rights through the police interpreter.[1] He admitted that he was in the country illegally and was placed under arrest as an illegal alien and transported to the county jail. Immigration authorities had not been contacted separately regarding defendant's arrest.

At about noon Oregon State Police Investigator Puckett spoke with defendant at the jail, again through the interpreter. Puckett gave the interpreter a "Miranda card," which he translated orally to defendant. He reread any rights defendant said he did not understand, including the part regarding the right to appointed counsel. Defendant said that he understood his rights and signed an advice-of-rights card, which was written in English. It is his subsequent description of the accident and the events following it that defendant claims should have been suppressed.

■ Defendant first argues that the statements made after his arrest should have been suppressed as the fruit of an illegal arrest, because state police did not have specific authority to arrest him as an illegal alien. We need not reach that question, because we agree with the trial court that the police had probable cause to arrest defendant on criminal charges connected with the hit-and-run accident. That they articulated another reason does not invalidate the arrest. *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969); *State v. Childers,* 13 Or App 622, 629, 511 P2d 447, *rev den* (1973). In *Cloman,* police investigating a burglary arrested the suspect under an unconstitutional city ordinance. The Supreme Court stated:

---

[1] The statements he gave before his arrest were suppressed and are not involved in this appeal.

"* * * We believe it reasonable to conclude that the officers gave this cause for arrest because of their uncertainty of the law of probable cause for arrest. We also believe it reasonable to conclude that the actual cause for which the officers arrested Cloman was some charge concerning the stolen wire. Under these circumstances, we find nothing to be served by holding the arrest invalid because the officers were uncertain about a problem which puzzles the courts. We hold that if the officers had probable cause to arrest, the arrest made is not rendered illegal because the officers expressed another and improper cause for arrest." 254 Or at 12.

■    The police were aware of the following circumstances: (1) Ruiz had given a story regarding ownership of the car involved in the hit-and-run accident that was contradicted by his companion; (2) LaRuiz stated that defendant had left that evening with Ruiz; (3) the pattern on the sole of defendant's shoes matched shoeprints found around the abandoned car; and (4) defendant's account of how he had spent the evening was changed during his conversation with the police. The police had probable cause to believe that defendant had committed a crime in connection with the hit-and-run accident they knew had occurred. Defendant's statement was not inadmissible as the fruit of an illegal arrest.

Defendant also challenges the sufficiency of the *Miranda* warnings given at the jail on the grounds that they were translated into "slang" Spanish and that he was prevented because of intoxication and lack of sleep from understanding them and making a knowing and intelligent waiver of them. We also understand him to contend that his waiver was involuntary.

■    We agree with the trial court's conclusion that "there was an indication of the concepts encompassed within each of the Miranda rights," and we hold that the statements made were constitutionally adequate to inform defendant of his rights. At the jail defendant was advised in Spanish as follows:

"You have a right not to say anything. Everything you say can be used against you in a court of law. You have a right to talk to an attorney and for an attorney to be present while these questions are being asked. If you

cannot pay for an attorney, one will be obtained for you and paid while you are being asked the questions. If you make a statement and you do not want it to be known you can stop. Do you understand your rights?"[2]

Although the words used were not exactly those used by the court in *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966),[3] that exact wording is not constitutionally mandated. It is the substance of the warning, not the form, that is important. *State v. Bopp,* 16 Or App 604, 611, 519 P2d 1277 (1974); *State v. Williams,* 1 Or App 30, 37, 458 P2d 699 (1969). When a translation of the *Miranda* warnings has been given, our inquiry is whether the concepts have been expressed rather than whether the words have been accurately translated. *See State v. Mason,* 53 Or App 811, 821, 633 P2d 820 (1981). Defendant was adequately informed of his rights.

■      "The prosecution has the burden of demonstrating a knowing, intelligent and voluntary waiver before any statement will be admissible." *State v. McGrew,* 38 Or App 493, 498, 590 P2d 755, *rev den* 286 Or 149, *cert den* 444 US 867 (1979); *State ex rel Juv. Dept. v. Sanders,* 56 Or App 724, 729, 643 P2d 384 (1982). Whether defendant actually understood the warnings given to him is a historical fact, *State v. Mason, supra,* 53 Or App at 821, and we are bound by the trial court's finding if supported by the record. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). The trial judge found that defendant had knowledge of his rights. Although he did not make specific findings as to the effect of alcohol and lack of sleep on defendant's ability to understand his rights, we presume from the court's ruling that it

---

[2] These are the facts as accepted by both defendant and the state in their briefs. The record shows that at trial Pilar Ruiz, the interpreter, stated in Spanish the rights as he recalled translating them to defendant, and they were translated into English in court by an interpreter.

[3] In *Miranda* the Supreme Court described the necessary advice:

"* * * He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. * * *" 384 US at 479.

found those conditions did not significantly hamper his ability to comprehend.

■ Defendant also suggests that his statement was involuntary because of his intoxication. The analysis of voluntariness of a confession and voluntariness of a waiver of rights is the same. *State v. Foster,* 288 Or 649, 655, 607 P2d 173 (1980). The proper inquiry regarding intoxication is whether "by reason of *extreme* intoxication a confession cannot be said to be the product of a rational intellect and a free will." (Emphasis in original.) *State v. William D. Smith,* 4 Or App 130, 134, 476 P2d 802 (1970). This question is one for the trial court, *State v. Paul,* 52 Or App 1017, 630 P2d 395 (1981), and we are bound by the trial court's findings if supported by the record.

■ The trial court found that the waiver was voluntary but made no specific findings regarding defendant's level of intoxication at the time of the waiver and statement or its effect. Defendant's interview was at approximately noon. When the officer first spoke with him at 3 a.m. that morning, he thought he detected alcohol on defendant's breath but did not believe that he was "under the influence." Ruiz testified that while he and defendant were in Idaho the evening before the accident the defendant had consumed a total of six beers and drank part of one beer during the drive home. Ruiz did not believe that defendant was drunk or showed any noticeable effects of intoxication. Defendant stated that he had had about five beers, which had affected him "maybe a little bit." Defendant points to no other evidence tending to show that he was intoxicated at noon when he was given the *Miranda* warnings. From the court's finding of voluntariness in response to defendant's contention that intoxication prevented it, we infer a finding that defendant was not intoxicated at the time the statements were made. The court did not err in overruling defendant's motion to suppress the statement.

The state concedes, and we agree, that under our decision in *State v. Lopez,* 56 Or App 179, 641 P2d 596, *rev den* 293 Or 146 (1982), which issued after defendant's sentencing, defendant's manslaughter and assault convictions should have been merged for purposes of sentencing. Accordingly, we remand for resentencing.

Convictions affirmed; remanded for resentencing.