Argued August 22, affirmed November 3, reconsideration denied December 10, 1975, petition for review denied January 13, 1976

STATE OF OREGON, *Respondent, v.* KENNETH LEROY HENSON (No. 15-955, CA 4278), *Appellant.*

541 P2d 1085

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and LEE, Judges.

LEE, J.

Defendant was convicted of violation of ORS 483.602[1] for leaving the scene of an accident. He

---

[1] ORS 483.602 states:

"(1) The driver of any vehicle involved in an accident

contends that the trial court erred in: (1) denying his motion to suppress incriminating statements made prior to receipt of *Miranda* warnings; and (2) refusing to give a requested instruction concerning voluntary intoxication. We affirm.

On September 12, 1974 at about 11:30 p.m., defendant was involved in a collision between his car and a car driven by Lois Juhrs. Two men, Steele and Schulmerich saw defendant disengage his car from the Juhrs car. Schulmerich saw the defendant look into the window of Mrs. Juhrs's car. According to Schulmerich, defendant then said, "I have to go" whereupon he entered his car and departed. According to Steele, defendant said that he was going to go for help. Schulmerich and Steele both agree that Steele told the defendant not to leave. As defendant departed, Schulmerich gave chase together with Reserve Deputy Sheriff Stern who had arrived at the scene.

Defendant failed to stop at two stop signs before the hood of his car flew up forcing him to stop. Stern pulled his truck in front of defendant's car and then showed defendant his badge and identification and asked to see the defendant's driver's license. Defendant said, "I don't believe you are a cop," and walked away. Stern noticed the odor of alcohol on the defendant's breath. Stern then took the keys out of defendant's car and asked him to sit in the car. Schulmerich's recollection of Stern's statement to defendant was that he "told him to stay in his car there."

At trial, over defendant's objection, Stern testified

which results in injury or death to any person or causes damage to a vehicle which is driven or attended by any person, immediately shall stop such vehicle at the scene of the accident, or as close thereto as possible, and shall remain at the scene of the accident until he has fulfilled the requirements of subsection (2) of this section. Every such stop shall be made without obstructing traffic more than is necessary. "* * * * *."

that he asked defendant why he left the scene of the accident and defendant said: "I was scared and I believe it was my fault." Stern further testified that he asked the defendant "why he left without giving his name and address and license number." The defendant's reply was, "I had a drink tonight and I don't mind telling you." Stern observed that the defendant's speech was slurred, his eyes were dilated, and he was in a stupor.

At about 11:55 p.m. Deputy Sheriff Moore arrived at the place where the defendant's vehicle had stopped. Officer Moore than administered field sobriety tests to the defendant and arrested him for driving under the influence of intoxicating liquor and read the *Miranda* rights to him. After Moore investigated the scene of the accident he informed the defendant that he was also under arrest for failing to leave his name and address at the scene of an accident.

## MIRANDA

■■ Defendant claims that the incriminating statements he made to Stern should have been suppressed because *Miranda* warnings were not first administered. *Miranda* warnings are required only "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." *Miranda v. Arizona*, 384 US 436, 478, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966). *Miranda*, however, did not seek to prohibit "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process" (384 US at 477) for, as the court noted—"[i]n such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." 384 US at 478.

■ While it is not always clear at what point field

questioning of a suspect becomes custodial interrogation, we agree with the trial judge that the defendant's statements were made during an on-the-scene investigation and prior to any custodial situation. *State v. Taylor,* 249 Or 268, 437 P2d 853 (1968); *also cf., State v. Cobb,* 22 Or App 510, 539 P2d 1140 (1975), Sup Ct *review denied* (1975).

In *State v. Taylor,* supra, the defendant was convicted of driving a motor vehicle while under the influence of intoxicating liquor. He was travelling south in a north-bound lane and collided with another vehicle. The investigating officer asked defendant, *inter alia,* if he was driving—where he was going—and when, where, and how much he had been drinking. The Supreme Court said:

> "In the matter before us, the officer was in the performance of a duty to investigate this accident and its cause. In determining its cause, he was required to determine in a preliminary way whether the cause was due to violation of law and, if so, whether there was reasonable cause to cite the defendant for that violation. This information is necessary in any case before an officer is justified in placing a person under arrest. Moreover, as stated in *Hoffa v. United States,* 385 US 293, 310, 87 S Ct 408, 17 L ed 2d 374, 386:
>
> " '* * * Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.' " 249 Or at 272.

■ The officer's removal of the keys from defendant's car did not subject the defendant to "custody" as contended. *Cf. State v. Crossen,* 10 Or App 442, 499 P2d 1357, Sup Ct *review denied* (1972).

## PROPOSED INSTRUCTION

Defendant's second assignment of error is that the trial court gave the Oregon State Bar Uniform Jury Instruction #403.03 which employs the word "determining" as follows:

"Voluntary intoxication, whether by alcohol, drugs, or other substance, is not a defense to a criminal charge. No act of a defendant committed in a state of voluntary intoxication is less criminal because of .his condition if that condition merely made him do the things he would not do otherwise.

"However, you may consider evidence of voluntary intoxication in *determining* any material element of the crime charged." (Emphasis supplied.)

The trial court refused to give defendant's requested instruction[2] which defendant argued was proper because ORS 161.125(1) employs the word "negative" as follows:

"Drug use, dependence on drugs or voluntary intoxication shall not, as such, constitute a defense to a criminal charge, but in any prosecution for an offense, evidence that the defendant used drugs, or was dependent on drugs, or was intoxicated may be offered by the defendant whenever it is relevant to *negative* an element of the crime charged." (Emphasis supplied.)

---

[2]

"The crime of which the defendant is accused (in Count I of the indictment), a necessary element is the existence in the mind of defendant of knowledge that an accident has occurred, a person has been injured, and a clear comprehension of those facts.

"If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had such knowledge.

"If from all of the evidence you have a reasonable doubt whether defendant had such knowledge by reason of his state of intoxication, you must give the defendant the benefit of that doubt and find that he did not have such knowledge.

■ The predecessor statute to ORS 161.125(1) was the former ORS 136.400 which provided:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition; but whenever the actual existence of any particular motive, purpose or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the defendant was intoxicated at the time, in *determining* the purpose, motive or intent with which he committed the act." (Emphasis supplied.)

Except for changes not here pertinent, the present ORS 161.125(1) is exactly as proposed by the Criminal Law Revision Commission, Section 11(1). *See* Proposed Oregon Criminal Code, 8-9, Art 2, § 11 (1970). In its Commentary, the Commission stated that Section 11(1) "substantially reenacts existing law, ORS 136.400." No intent appears from the Commentary to make a substantive change from the former ORS 136.400 by the introduction of the word "negative" in ORS 161.125(1).[9] The legislative history fails to support the distinction urged by defendant.

Affirmed.

---

[9] While the trial court preferably could have used the new statutory word "negative" in the instruction given, we do not feel that it was prejudicial error in this instance for the court to use the former statutory word "determining."