Argued April 21, affirmed May 11, petition for rehearing denied
June 7, petition for review denied September 6, 1972

# STATE OF OREGON, *Respondent, v.* FREDERICK RAYMOND ARNOLD (No. 20213), *Appellant.*

496 P2d 919

*Gerald W. Markham,* Law Intern, Salem, argued the cause for appellant. With him on the brief were Gary D. Babcock, Public Defender, and F. E. Glenn, Deputy Public Defender, Salem.

*John L. Snyder,* District Attorney, Dallas, argued the cause and filed the brief for respondent.

Before Schwab,[*] Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

Defendant appeals from conviction of attempted grand larceny. Former ORS 164.310. He was indicted for larceny over $75, tried by a jury, and found guilty of the attempt. His assignments of error are: (1) there was insufficient evidence for conviction; (2) a police officer's testimony that defendant relied on his constitutional right to remain silent when questioned should not have been admitted; (3)(a) that he was not advised of his right to have counsel present during questioning and (b) he was not advised that he could stop answering questions at any time, as required by *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR 3d 974 (1966); and (4) he was convicted on a 10-2 verdict. The latter was decided adversely to defendant's contention in *State v. Gann,* 254 Or 549, 463 P2d 570 (1969).

The state's principal testimony was that of Robert "Robbie" Cantonwine, a thirteen-year-old boy. He testified that while waiting in the outer office of Dr. Flaming two men, later identified as defendant and an Arthur Huff, got out of a parked car and entered the doctor's office. No one else was in the outer office

---

[*] Schwab, Chief Judge, did not participate in this decision.

at the time as the receptionists were taking a coffee break in a rear office. One of the men asked Cantonwine whether the doctor was in, to which he replied, "yes." Evidence showed Huff had been in the office the previous day. Huff walked to the door which led to the rear of receptionist's desk and window. Defendant proceeded to a point directly in front of the receptionist's window. After a short pause, Huff walked to where defendant was standing and the two had a whispered conversation.

Huff returned to the door. Cantonwine next saw defendant nod in Huff's direction, after which he heard the door open and, shortly thereafter, a crash and jingling sound. Defendant ran out the front door followed by Huff.

Further testimony was that Mrs. Fast and Mrs. Spady, the two receptionists, heard the crash and ran into the main office just as Huff was exiting. The cash drawer was on the floor, with coins scattered about. The women ran outside, Mrs. Spady pursuing defendant and Mrs. Fast, Huff. Although she was quickly outdistanced by defendant, Mrs. Spady gave defendant's description to a passing motorist who followed defendant in a car.

Huff ran only a short distance before he stopped and walked back to the doctor's office with Mrs. Fast. While Mrs. Fast was phoning the police Huff asked if anyone had seen the crime and commented that he had tried to catch the man but could not. He said that he was a detective and suggested that the coins and doorknob to the office be wiped with a towel.

Officer Perkins received the report of the larceny and a description of the man whom Mrs. Spady had chased. En route, Perkins saw defendant walking

from the direction of the doctor's office and accosted him. While defendant identified himself to the officer the pursuing motorist arrived and said: "That's the man I've been following." Perkins asked defendant to accompany him to the doctor's office, to which defendant agreed. At the office defendant was identified by Cantonwine. When asked, Huff said he had never seen defendant before.

· . Mrs. Fast testified that the cash drawer had no catch on it, so, as had happened to her several times, when it is pulled out too quickly it drops to the floor.

■■. Defendant's argument under this assignment of error is twofold: (a) he argues the evidence as a whole is insufficient to sustain the verdict, relying on *Bailey v. United States,* 416 F2d 1110 (DC Cir 1969); and (b) the state failed to prove the owner of the property did not consent to the taking.

■ *Bailey* is distinguishable on its facts in that here defendant drove to the scene of the crime with the other participant, Huff; he entered the office with Huff; and his conduct, including the nod, indicated he signalled Huff to enter the office door, from which the jury could infer he was acting as a lookout in the attempted larceny. *See State v. Miller,* 2 Or App 408, 467 P2d 973, Sup Ct *review denied* (1970).

■ ■ Defendant further argues that it was incumbent on the state to have the owner testify that he did not consent to the taking. This argument was not raised in the trial court and we will not consider it on appeal. *State v. Avent,* 209 Or 181, 183, 302 P2d 549 (1956).

■■. Defendant contends the court erred in four instances by allowing into evidence "tacit admissions," yet he concedes three are not "true" tacit admissions.

We agree. Moreover, defendant concedes no objection was made to admission of the fourth in the trial court and, therefore, we have nothing to consider on appeal. *State v. Avent,* supra, and *State v. Whitelock,* 2 Or App 530, 469 P2d 37, Sup Ct *review denied* (1970).①

■ Defendant contends that a statement adduced by Officer Perkins en route to the police station was in violation of *Miranda.*

Defendant made no objection to the admission of this statement; however, the court held an *in camera* hearing to determine the admissibility of this statement and was well aware of the issue defendant now raises. Therefore, we will consider it on the merits.

Officer Perkins testified that he advised defendant:

"* * * that he had the right to remain silent. If he did say anything, it could be used against him in a court of law; *that he had the right to consult with an attorney prior to any questioning;* and if he could not afford an attorney, one would be

---

① The "tacit admission" defendant refers to in his reply to Perkins's query of whether he knew Huff is: "I don't have to answer that question." Defendant grounds this contention on the following footnote from *Miranda:*

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation * * *." 384 US at 468, n 37.

The prosecution did not comment on defendant's statement. Moreover, we do not believe Perkins's question constitutes an *accusation* such as was contemplated by *Miranda.*

Contrary to defendant's contention, we do not believe the trial court was apprised of this aspect of the *Miranda* decision raised by the admission of the above statement. Rather, in the *in camera* hearing the court's inquiry was directed to the adequacy of the warnings given, considered *infra.*

appointed for him before any questioning if he wished." (Emphasis supplied.)

After asking defendant whether he understood these rights and receiving an affirmative reply, Perkins asked defendant whether he knew Huff. Defendant replied: "I don't have to answer that." Perkins stated, "Okay, if you don't want to answer that, I won't make you * * *." He then asked defendant "why he ran?" Defendant replied that "he was scared."

Defendant's objection to the admission of the latter statement is grounded on the failure of Perkins to advise him (a) of his right to counsel *during questioning,* and (b) his right to stop answering at any time, which defendant contends is required by *Miranda v. Arizona,* supra. Neither *Miranda* nor any case cited by defendant requires the advice defendant urges in (b), although this court is cognizant that "Miranda cards" used by law enforcement officers sometimes include such a warning.

This court and our Supreme Court have previously addressed the question of whether a warning that does not include defendant's right to counsel *during questioning* is adequate. The Supreme Court in *State v. Lowry,* 245 Or 565, 423 P2d 172 (1967), held that a warning "you are entitled to consult a lawyer * * * adequately apprised him [defendant] of his right to counsel *prior to* and *during interrogation."* (Emphasis supplied.) The briefs disclose *Lowry* was tried in 1965. *Miranda* was decided in 1966. Therefore, the *Lowry* decision in 1967 has questionable precedential value. However, the court was aware of *Miranda,* and it used the same standard articulated in *Miranda,* i.e., the right to counsel "prior to and during interrogation."

In *State v. Williams,* 1 Or App 30, 458 P2d 699 (1969), we held:

> "* * * In the absence of a fully effective equivalent, this warning of his right to have counsel present during questioning is an absolute prerequisite to interrogation * * *." 1 Or App at 33.

The case involved several separate "Miranda" warnings to defendant, followed by an interrogation; the substance of the warning, as is pertinent to the case at bar, was that defendant had a right to an attorney "before he said anything to anybody." This court said:

> "We hold these warnings to be adequate on these facts, but strongly recommend that more precise language be used in advising individuals of constitutional rights * * *." 1 Or App at 36.

We went on to note a decision of the Nevada Supreme Court, *Criswell v. State,* 84 Nev 459, 460, 443 P2d 552 (1968):

> "In that case '* * * the appellant, in the office of the district attorney, was advised of his constitutional right to remain silent, that anything that he might say could be used against him in court, that he had the right to counsel, and if he was indigent and could not afford counsel that counsel would be provided * * *.' The Court, in holding that these warnings met the requirements of *Miranda,* 84 Nev at 462, said, '* * * While the warnings given in the district attorney's office did not specifically advise the appellant that he was entitled to have an attorney present at that moment and during all stages of interrogation, no other reasonable inference could be drawn from the warnings as given.'"

Finally, in *State v. Woods,* 3 Or App 232, 237,

471 P2d 850, Sup Ct *review denied* (1970), defendant was advised,

> "* * * You have the right to the presence of an attorney * * * You have the right to remain silent and not answer questions until you have consulted with an attorney."

We held the advice adequate.

■ Here, defendant was advised of his right to have an attorney present *before* he answered any questions. He did not request an attorney on that advice. It is reasonable to assume, on these facts, that he would not have requested the *presence* of an attorney while he answered the police officer's questions, had he been so advised. The advice was adequate.

Affirmed.