Argued and submitted November 30, 1990, affirmed April 22, reconsideration denied June 17, petition for review denied July 21, 1992 (313 Or 627)

# STATE OF OREGON,
*Respondent,*

*v.*

# STEVEN JOHN QUINN,
*Appellant.*

## (8900210CR; CA A62439)

831 P2d 48

Steven V. Humber, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender, Salem.

Cynthia A. Carter, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

De MUNIZ, J.

Buttler, P. J., dissenting.

## De MUNIZ, J.

Defendant appeals his conviction for criminally negligent homicide, ORS 163.145(1), and raises two assignments of error. First, he contends that the trial court erred by denying his motion to suppress statements that he made to the police after his arrest; second, he contends that the evidence was insufficient to prove that his acts were the legal cause of the victim's death and that the court erred by denying his motion for judgment of acquittal. We affirm.

Defendant waived his right to a jury trial. These facts are taken from the trial court's findings. The victim emerged from a store after purchasing beer. He was intoxicated. Defendant and two friends were outside, "messing around in the street." They were making "gun noises." The victim, a Viet Nam veteran, was offended by their conduct. Words were exchanged, and a fight ensued. It is unclear who started the fight. The victim, who had just participated in a pool tournament, struck defendant in the leg with his pool cue. There was a lull in the action, long enough for defendant to remove himself from the fray. Instead, defendant picked up a chunk of asphalt and struck the victim with it. He fell to the street, and defendant and his friends fled. It was snowing. Riley, who was driving down the street, did not see the victim, because of the snow and slush on the road. She drove over him. Riley stopped and made sure that the victim received emergency medical attention. Defendant stipulated that the victim's death was caused by being run over by a car.

These facts are taken from the court's findings and the evidence in the record that supports those findings on defendant's motion to suppress statements that he made after being arrested. *See State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Deputy Sheriff Hannigan arrested defendant six days after the altercation with the victim. Hannigan handcuffed defendant and placed him in the back seat of the patrol car. Hannigan testified that he was "fairly sure" that he advised defendant:

> "It's my duty as a police officer to advise you of your rights. You have the right to remain silent, anything you say can and will be used against you in a court of law. You have the right to an attorney. If you can't afford to hire an attorney, one will

be appointed to represent you. If you do give a statement at any time, you can stop at any time you wish. Do you understand these rights?''

Defendant indicated that he understood. Hannigan asked defendant about his involvement in the victim's death. Defendant denied that he had murdered anyone. Hannigan told defendant that two witnesses had said that defendant was involved. Defendant began to cry and then explained his involvement. On the way to the sheriff's office, he elaborated on that involvement. When they reached the station, another officer removed the handcuffs. Hannigan read defendant his rights from a standard *Miranda* card.[1] Hannigan and Detective Awmiller then interviewed defendant, who reiterated the statements that he had made in the car.

The court denied defendant's motion to suppress his statements, and defendant then waived his right to a jury. After a bench trial, the court found him guilty of criminally negligent homicide.

In his first assignment of error, defendant contends that the warnings that Hannigan gave him in the car did not satisfy the requirements of Article I, section 12, or the Fifth Amendment. He contends that they were defective, because they did not inform him that he could consult with an attorney before questioning and that he could have his lawyer present during interrogation. He also argues that the statements he made after receiving the standard *Miranda* warnings at the station should have been suppressed, because they were the tainted fruit of the statements that he made in the car.

---

[1] The Klamath County Sheriff's Advice of Rights Statement reads:

"It is my duty as a police officer to inform you of your rights.

"1. You have the right to remain silent.

"2. Anything you say can and will be used against you in a court of law.

"3. You have the right to talk to a lawyer and have him present with you while you are being questioned.

"4. If you cannot afford to hire a lawyer, one will be appointed to represent you before being questioned, if you wish one.

"5. If you do give a statement, you can stop talking any time you wish.

"6. Do you understand these rights?

"7. Having these rights in mind, do you wish to talk to us now?"

■ In reviewing defendant's constitutional claims, we look first to the Oregon Constitution. *Sealy v. Hicks*, 309 Or 387, 393, 788 P2d 435 (1990), *cert den* ___ US ___, 111 S Ct 65 (1991); *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983). Defendant was in "full custody" when he was handcuffed and placed in the back seat of the police car. Any custodial setting is inherently coercive. *State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987); *State v. Sparklin*, 296 Or 85, 89, 672 P2d 1182 (1983). Therefore, defendant was entitled to "*Miranda*-like" warnings under Article I, section 12, before being interrogated. *State v. Carlson*, 311 Or 201, 204, 808 P2d 1002 (1991); *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990); *see Miranda v. Arizona*, 384 US 436, 458, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

■■ Oregon courts have not declared precisely what Article I, section 12, requires police to tell a person who is in custody. In *State v. Sparklin, supra*, the Supreme Court said:

> "An attorney's presence at custodial interrogations is one way to secure the right to be free from compelled self incrimination. For this reason we require the police to inform a detained person that he may terminate questioning at any time and that he may have an attorney to advise him before he speaks." 296 Or at 89.

Article I, section 12, and the Fifth Amendment each proscribe compelled self incrimination. We have previously observed that

> "the Oregon constitutional right against self incrimination is presently protected by the same warnings which the United States Supreme Court requires under the Fifth and Fourteenth Amendments * * *." *State v. Rowe*, 79 Or App 801, 804, 720 P2d 765, *rev den* 302 Or 86 (1986).

In evaluating the contours of Article I, section 12, we continue to see "no value in being different merely for the sake of the difference." *See State v. Kell*, 303 Or 89, 95, 734 P2d 334 (1987). Accordingly, analyses under the Fifth Amendment are persuasive in determining what Article I, section 12, requires. Our Supreme Court has been similarly persuaded. In *State v. Sparklin, supra*, it said:

> "[A]s long as the text of the federal *Miranda* warnings remains the law, we think that the convenience of a single

text exceeds any gain from improving that text." 296 Or at 89.

In *Miranda, supra,* the Supreme Court held:

> "[A]n individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation. * * * [T]his warning is an absolute prerequisite to interrogation. * * *
>
> "* * * * *
>
> "[I]t is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him." 384 US at 472.

Although the Oregon Supreme Court found the "text" of the federal *Miranda* warnings convenient, *Miranda* itself does not require any particular language. Indeed, "no talismanic incantation [is] required to satisfy its strictures." *California v. Prysock,* 453 US 355, 359, 101 S Ct 2806, 69 L Ed 2d 696 (1981). An "effective equivalent" is satisfactory. *Duckworth v. Eagan,* 492 US 195, 202, 109 S Ct 2875, 106 L Ed 2d 166 (1989); (quoting *Miranda v. Arizona, supra,* 384 US at 476).

■　　What Hannigan told defendant in the patrol car is quoted above. Defendant indicated that he understood those rights. The issue is whether those warnings effectively informed defendant that he was entitled to consult with an attorney before questioning and to have one present during interrogation.

In *California v. Prysock, supra,* the defendant was not expressly advised that he had the right to have an attorney appointed before further questioning. The Supreme Court observed that

> "[inquiries into] whether a criminal defendant was adequately informed of his right to the presence of appointed counsel prior to and during interrogation [have focussed on whether] the right to appointed counsel was linked with some future point in time after the police interrogation." 453 US at 360.

The Court found that the warnings given the defendant were adequate, because

> "nothing in the warnings given respondent suggests any limitation on the right to the presence of appointed counsel

different from the *clearly conveyed rights to a lawyer in general* * * *." 453 US at 360. (Emphasis supplied.)

Similarly, the warnings that Hannigan gave defendant did not suggest any limitation whatsoever on his right to have counsel present. He was told that he had a right to counsel and that, if he could not afford a lawyer, one would be appointed. He was not expressly told that he could consult a lawyer before questioning or that he could have his lawyer present during questioning. Nonetheless, the standard in *California v. Prysock, supra,* was met. The warning that defendant received did not suggest any limitation on his right to have counsel present during interrogation, or that the appointment of counsel was conditioned on a future event. Hannigan told defendant, *"You have the right* to an attorney." (Emphasis supplied.) That advice apprised defendant that he had the right to counsel, right then. It could not mislead him into believing that he *would have* the right to counsel at some future time, nor did it suggest that defendant's right to counsel was conditioned upon any event. Instead, the warning effectively informed defendant that his right to counsel attached immediately and unconditionally.

■    The evil to be avoided arises when police give "pretzel-like warnings [that are] intertwining, contradictory, and ambiguous." *See Duckworth v. Eagan, supra,* 492 US at 216 (Marshall, J., dissenting) (quoting *Commonwealth v. Johnson,* 484 Pa 349, 356, 399 A2d 111 (1979)). The thread connecting cases on inadequate warnings is that the warnings cannot mislead the suspect into believing that his right to counsel is conditioned on some future event or that it does not accrue immediately. In *Duckworth,* the defendant was told that a lawyer would be appointed "if and when you go to court." *Duckworth v. Eagan, supra,* 492 US at 198. The Court held that that provision accurately stated the procedure for appointing counsel under Indiana law[2] and did not invalidate an otherwise adequate set of warnings that informed the defendant that he had a right to counsel before and during questioning. 492 US at 204.

---

[2] Under Indiana law, counsel is appointed at the defendant's initial court appearance. Indiana Code § 35-33-7-6 (1988).

In *United States v. Lamia*, 429 F2d 373, *cert den* 400 US 907 (2d Cir 1970), the defendant was given warnings similar to those that this defendant received in the patrol car. After Lamia's arrest, an FBI agent told him that he was not required to make a statement and that, "he had a right to an attorney, if he wasn't able to afford an attorney, an attorney would be appointed by the court." 429 F2d at 374. He argued that that warning did not inform him that he had a right to have his lawyer present during interrogation. The Second Circuit concluded:

> "Lamia had been told *without qualification* that he had the right to an attorney and that one would be appointed if he could not afford one." 429 F2d at 376. (Emphasis supplied.)

The defendant was informed that his right to an attorney was unconditional. He was effectively informed that he had the right to have his lawyer present during interrogation. *See also United States v. Floyd*, 496 F2d 982 (2d Cir), *cert den sub nom Miller v. United States*, 419 US 1069 (1974).

Similarly, the Oregon Supreme Court upheld a warning that did not mislead the defendant into believing that his access to counsel would be delayed or that it was contingent upon a future event. *State v. Lowry*, 245 Or 565, 423 P2d 172 (1967). In that case, the defendant had been told, "you are entitled to consult a lawyer." 245 Or at 566. He was also told that the state would provide him with a lawyer if he could not afford one and that he did not have to talk if he chose not to. The court held:

> "[T]he manner in which defendant was informed adequately apprised him of his right to counsel prior to and during interrogation." 245 Or at 566.

*Lowry* cites no authority for its conclusion, and it was tried before *Miranda v. Arizona, supra*, was decided. However, *Lowry* was argued after *Miranda*, and the briefs in that case discuss *Miranda*.

The timing of *Lowry* does not diminish the value of its holding. Whether the court construed the defendant's rights from its interpretation of *Miranda*, or divined them from some other source, is irrelevant. What is relevant is that the court properly recognized the rights that a suspect must be warned about and concluded that the language of the

warnings that were given effectively conveyed the necessary information. There is no meaningful distinction between the adequacy of the warnings that Lowry received and the warnings that Hannigan gave defendant. In both cases, the warnings apprised the suspects that their right to counsel was not conditioned on a future event and that it attached immediately.

■■ The substance of the warnings, not the exact words, determines whether the warnings are adequate. *State v. Corona*, 60 Or App 500, 505, 655 P2d 216 (1982). We conclude that a warning that the right to counsel accrues immediately and unconditionally does inform a suspect that he has a right to counsel before and during interrogation. Hannigan's warnings could not have misled defendant into believing "that a lawyer [would] not be provided until some indeterminate time in the future *after questioning." Duckworth v. Eagan, supra*, 492 US at 214 (Marshall, J., dissenting). (Emphasis in original.)

■ Defendant claims that the statements that he made at the police station were tainted by the statements that he made in the police car, because, "[o]nce [he] made his original statement, the 'cat was out of the bag.' " *State v. Garrison*, 16 Or App 588, 602, 519 P2d 1295, *rev den* (1974); *see also United States v. Bayer*, 331 US 532, 540, 67 S Ct 1394, 91 L Ed 1654 (1947). Because the warnings that Hannigan gave defendant in the police car satisfied Article I, section 12, and the Fifth Amendment, the subsequent confession could not have been tainted by the statements that defendant made in the car.

■■ In his second assignment of error, defendant contends that the evidence was insufficient to support a finding that he was the legal cause of the victim's death. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the state. *See State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). We will reverse the trial court's denial of a motion for judgment of acquittal only if no rational trier of fact could have found, beyond a reasonable doubt, that the defendant was the legal cause of the victim's death. *State v. King, supra*, 307 Or at 339; *State v. Harris*, 288 Or 703, 721, 609 P2d 798 (1980).

ORS 163.145(1) provides:

"A person commits the crime of criminally negligent homicide when, with criminal negligence, the person causes the death of another person."

"Criminal negligence" means that

"a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10).

The trial court found that defendant had an adequate opportunity to withdraw from the fracas. Instead, he picked up a chunk of asphalt and struck the victim with it. He used unlawful force against the victim and left him lying in the street.

Defendant argues that the victim's death "was the result of [Riley's] conduct of driving over [him]." The fact that defendant's conduct was not the immediate cause of the victim's death does not relieve him of responsibility. Defendant is responsible for the foreseeable consequences of the unlawful force that he used. *State v. Baker*, 87 Or App 285, 289, 742 P2d 633, *rev den* 304 Or 405 (1987). When defendant left the victim lying in the road, at a minimum, he ignored the substantial and unjustifiable risk that a motorist, unable to see the victim, might drive over him. Defendant's conduct was the legal cause of the death, and the trial court properly denied his motion for judgment of acquittal.

Affirmed.

**BUTTLER, P. J.,** dissenting.

The majority holds that, under Article I, section 12, and the Fifth Amendment, a person in full custody need not be advised before he is questioned that he has the right to consult an attorney *before* questioning begins and to have the attorney *present during* questioning. Because I believe that that advice before custodial questioning begins is fundamental to the protection of a person's rights under both Article I, section 12, even if it is not under the Fifth Amendment, I dissent.

I agree with the majority that, under Article I, section 12, the police, before interrogating a person in custody, must give the person the same advice or warnings that are required by the Fifth Amendment under *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). However, the majority goes on to hold that warnings that fall short of *Miranda's* mandate are sufficient. This case is the first one to decide exactly what warnings are required under the Oregon Constitution before custodial questioning can begin, and I believe that the majority gets us off to a very bad start, as well as misinterprets *Miranda* and its progeny.

In *State v. Sparklin*, 296 Or 85, 672 P2d 1182 (1983), the court refused to require *more* detailed warnings than *Miranda* requires before police questioning, but no Oregon case has held, as the majority now does, that *less* detailed warnings are acceptable under Article I, section 12. That is not to say that the warnings must be in the exact words of *Miranda*, but their substance must meet its basic requirements. When defendant was arrested, Officer Hannigan advised him:

> "It's my duty as a police officer to advise you of your rights. You have the right to remain silent, anything you say can and will be used against you in a court of law. You have the right to an attorney. If you can't afford to hire an attorney, one will be appointed to represent you. If you do give a statement at any time, you can stop at anytime you wish. Do you understand these rights?"

Defendant was *not* told that he was entitled to consult with an attorney *before* questioning and to have one present *during* interrogation until he had arrived at the police station, when he was read his rights from a standard *Miranda* card. By that time, he had already incriminated himself in response to questions. He then gave a tape-recorded statement reiterating what he had said earlier. The majority says that it is sufficient that he was told that he had the right to an attorney and that, if he could not afford one, one would be appointed for him. However, *Miranda* requires that he be advised of *both* of those rights. After discussing the importance of the assistance of counsel in the face of interrogation, the Court said in *Miranda*:

"Accordingly we hold that an individual held for inter-rogation *must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation* under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evi-dence against him, *this warning is an absolute prerequisite to interrogation.* No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. *Only through such a warning is there ascertainable assurance that the accused was aware of this right."* 384 US at 471. (Emphasis supplied.)

The Court went on to discuss the right of indigents to have appointed counsel at the time of interrogation:

"In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this *additional* warn-ing, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one." 384 US at 473. (Emphasis supplied.)[1]

Although defendant was advised that he had the right to an attorney and that one would be appointed for him if he could not afford one, he was *not* told, as *Miranda* requires, that he had the right to consult with an attorney before being ques-tioned and to have the attorney present during questioning.[2] In my opinion, the advice that was omitted is fundamental to defendant's state constitutional right not to be compelled to

---

[1] The majority has condensed the two quotations from *Miranda* into one short quote, 112 Or App at 613, giving the impression that the Court did not treat the subjects as separate requirements. That is wrong and misleading.

[2] I am aware that the court in *State v. Lowry,* 245 Or 565, 566-67, 423 P2d 172 (1967), recognized the right of the defendant to counsel before and during interroga-tion and interpreted the advice that he was given as adequately apprising him of that right. Presumably, that case was decided under the Fifth Amendment. Although the events had occurred before *Miranda* was decided, the opinion was written after-wards. It cites no constitutional provision, state or federal, and does not mention *Miranda.*

In *State v. Williams,* 1 Or App 30, 33, 458 P2d 699 (1969), applying the federal constitution, this court said that the right to have counsel present during question-ing is an "absolute prerequisite to interrogation." In *State v. Arnold,* 9 Or App 451, 455, 496 P2d 919, *rev den* (1972), we held that advising the defendant that he had the right to consult with an attorney prior to any questioning was sufficient.

incriminate himself, just as it is the "absolute prerequisite to interrogation" under the Fifth Amendment. Accordingly, I would hold that defendant's statements during the initial questioning before he was told that he had the right to consult an attorney before questioning and to have his attorney present during the questioning should have been suppressed.

Inexplicably, the majority relies on two United States Supreme Court decisions, *California v. Prysock*, 453 US 355, 101 S Ct 2806, 69 L Ed 2d 696 (1981), and *Duckworth v. Eagan*, 492 US 195, 109 S Ct 2875, 106 L Ed 2d 166 (1989), decided after *Miranda*, in support of its contention that the warnings given here were adequate. Even if we were to consider post-*Miranda* decisions as controlling under Article I, section 12, they would require reversal here. In *Prysock*, the respondent *was* advised of his right to have a lawyer present before and during interrogation and to have a lawyer appointed at no cost if he could not afford one. The California Court of Appeals had held that, because he had not been expressly advised that he had the right to have an attorney appointed before further questioning, the warnings were inadequate. The Supreme Court held: "These warnings conveyed to respondent his right to have a lawyer appointed if he could not afford one prior to and during interrogation," 453 US at 361, and they, therefore, complied with the requirements of *Miranda*. That is not this case.

The majority's reliance on *Duckworth* is even more perplexing. The defendant there was read this advice before being questioned initially by the police:

"Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. *You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning.* You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you've talked to a lawyer." 492 US at 198. (Emphasis in original.)

He signed the form and gave an exculpatory explanation for his activities. He was then locked up, and about 29 hours later he was questioned again. Before that questioning began, he was read this advice:

"1.   Before making this statement, I was advised that I have the right to remain silent and that anything I might say may or will be used against me in a court of law.

"2.   That I have the right to consult with an attorney of my own choice before saying anything, and that an attorney may be present while I am making any statement or throughout the course of any conversation with any police officer if I so choose.

"3.   That I can stop and request an attorney at any time during the course of the taking of any statement or during the course of any such conversation.

"4.   That in the course of any conversation I can refuse to answer any further questions and remain silent, thereby terminating the conversation.

"5.   That if I do not hire an attorney, one will be provided for me." 492 US at 199.

The defendant read the form back to the officers and signed it, then confessed.

The issue was whether the advice that counsel would be appointed "if and when you go to court," which was included in the first advice, rendered the advice defective, because it might have caused the defendant to have linked his right to appointed counsel before interrogation with a future event. The court held that, because the defendant had been advised expressly that he had the right to the advice of an attorney before questioning and to have him present during questioning, the requirements of *Miranda* were fulfilled. It said:

"Miranda does not require that attorneys be producible on call, but only *that the suspect be informed, as here, that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one*. The Court in Miranda emphasized that it was not suggesting that 'each police station must have a 'station house lawyer' present at all times to advise prisoners.' 384 US, at 474, 16 L Ed 2d 694, 86 S Ct 1602, 10 Ohio Misc 9, 36 Ohio Ops 2d 237, 10 ALR3d 974. If the police cannot provide

appointed counsel, Miranda requires only that the police not question a suspect unless he waives his right to counsel. Ibid. Here, respondent did just that." 492 US at 204. (Emphasis supplied; footnote omitted.)

Neither *California v. Prysock, supra,* nor *Duckworth v. Eagan, supra,* supports the majority's holding that, so long as defendant was advised of his right to counsel and that one would be appointed if he could not afford one, *Miranda* was satisfied. Those cases are relevant only when the defendant has first been advised of his right to consult an attorney before questioning began and to have one present during questioning. That was not done here.

The majority's reliance on 2 decisions from the Second Circuit Court of Appeals[3] is anomalous. They fly in the face of *Miranda* and do not bind us, even if we were resolving defendant's Fifth Amendment rights, rather than just his rights under Article I, section 12. Other federal circuit courts have gone to the other extreme.[4] However, even if the United States Supreme Court, post-*Miranda*, has changed the ground rules, Oregon has adopted *Miranda*, not necessarily its progeny. By adopting a United States Supreme Court analysis under the United States Constitution, we do not decide, or even imply, that all future elaborations or changes of the analysis by that court will also apply to a claim under the Oregon Constitution. *State v. Kell,* 303 Or 89, 734 P2d 334 (1987). Accordingly, defendant's confession while he was in the police car must be suppressed.

---

[3] *United States v. Floyd,* 496 F2d 982 (2nd Cir), *cert den* 419 US 1069 (1974); *United States v. Lamia,* 429 F2d 373 (2nd Cir 1970), *cert den* 400 US 907 (1970).

[4] In *United States v. Noti,* 731 F2d 610, 615 (9th Cir 1984), the defendant was advised:

"Michael, you have the right to remain silent, the right to the services of an attorney before questioning, if you desire an attorney, and cannot afford one, an attorney will be appointed by the Court with no charge to you. Any statement you do make can and will be used against you in a court of law. Do you understand each of these rights?"

The court held that the warnings were inadequate, because the defendant was not told that his attorney could be present during questioning. In *Windsor v. United States,* 389 F2d 530, 533 (5th Cir 1968), the court held that "merely telling [a defendant] that he could speak with an attorney * * * is not the same as informing him that he is entitled to the presence of an attorney *during* interrogation * * *." (Emphasis supplied.)

The question remains whether the later confessions made at the police station must also be suppressed, even though defendant was properly advised of his rights before that questioning began. Defendant was arrested a little after 5:00 p.m. In the police car, after being given the *Miranda* warnings at issue, defendant, in response to questions, explained to Hannigan what had happened the night of the fight. He admitted that, at one point, the fighting stopped long enough for him to walk over to the street corner and pick up "some type of object" that he used to strike the victim on his head or on his chest, he was not certain which. The victim fell down, and he and two friends, whom he named, ran to one of the friends' mother's house.

It is unclear what happened during the hour and a half following defendant's arrival at the police station at about 5:15 p.m. Hannigan testified that they discussed with defendant the witnesses "and that type of thing." In any event, at 6:38 p.m., Hannigan was determined to get defendant's statement on tape. On the tape, Hannigan stated, "We've been talking for the past, oh, hour and a half and, like I said, we're gonna go through it again on tape, o.k.?" Defendant was advised properly of his *Miranda* rights from a standard card, and the officers then recorded a statement very similar to, but more detailed than, the statement that defendant had made earlier in the police car. Defendant stated that, after striking the victim with a chunk of asphalt, the victim "hit the ground and just rolled over and then back onto his back." He did not remember whether the victim moved after that and claimed that he was not close enough to see whether the victim was breathing.

A third and final statement was tape recorded the following morning at 9:15 a.m., the purpose of which was "just clearing up his statement from the preceding evening, getting more detail as to what happened." That statement was also taken after adequate *Miranda* warnings were given.

The state does not argue that, even if the first statement was not admissible, the subsequent statements were; its only contention is that defendant's subsequent statements are not tainted fruits, because the first statement was not poisoned. When, during the first interrogation, defendant admitted that he had struck the victim with an object and that

the victim fell to the street pavement, after which defendant ran from the scene with two named friends, the "cat was out of the bag." The later statements merely clarified details. The delay in time and change of place was insufficient to dissipate the taint of the earlier violation of his rights. Once he had "let the cat out of the bag," defendant's later confessions were the fruits of the first and were similarly poisoned. *State v. Garrison*, 16 Or App 588, 602, 519 P2d 1295 (1974).

Because defendant's rights under Article I, section 12, *and* the Fifth Amendment were violated, I would reverse and remand for a new trial.

Accordingly, I dissent.