Argued and submitted January 8, 2016, affirmed May 3, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ELAINE RENEE FINK,
*Defendant-Appellant.*

Washington County Circuit Court
D124537T; A157266

395 P3d 934

Jesse Merrithew argued the cause for appellant. With him on the brief was Levi Merrithew Horst LLP.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and James Aaron, Assistant Attorney General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**GARRETT, J.**

Defendant was convicted of driving under the influence of intoxicants (DUII), ORS 813.010, after police found her asleep behind the wheel of a parked vehicle with its engine still running. On appeal, defendant assigns error to the trial court's denial of her motion to suppress evidence of incriminating statements that she made to the arresting officer, arguing that the evidence was obtained in violation of her rights to counsel and against compelled self-incrimination. Reviewing for legal error, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), we conclude that the trial court did not err because the *Miranda* warnings provided to defendant were not rendered constitutionally inadequate by subsequent statements made by the arresting officer, and defendant knowingly and voluntarily waived those rights by initiating a conversation with the officer that evinced a willingness to enter into a generalized discussion about the investigation. Accordingly, we affirm the judgment of the trial court.

We take the following facts from the record at the suppression hearing, which includes an audio and video recording of defendant's interaction with the police.[1] Officer Spitler was investigating a noise complaint when he encountered defendant "slumped over" in the driver's seat of a vehicle that was parked with the engine running. When Spitler woke defendant, he observed signs of intoxication and began an investigation for DUII. Throughout the interaction, defendant repeatedly told Spitler that he was "not very nice" and asked him not to talk to her. Spitler eventually arrested defendant for DUII. Spitler then placed defendant in the back of his patrol car and read her the following *Miranda* warnings:

> "You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer, and have him or her present with you while you're being questioned. If you cannot afford to

---

[1] Because the transcript from the suppression hearing lists many sections of that recording as "indiscernible," and because those sections are readily discernible when the recording is viewed directly, we rely on the recording itself rather than its transcription.

hire a lawyer, one will be appointed to represent you before any questioning if you wish."

As Spitler read the warnings, defendant began reciting the rights along with him. When asked whether she understood those rights, defendant indicated that she did.

Defendant then asked to speak to Sergeant Sitton, one of the other officers at the scene. Spitler left defendant in the car while she spoke with Sitton. Defendant asked Sitton for clarification as to why she was being arrested. When Spitler returned, the following interaction took place (because of its significance to the issues on appeal, we quote it at length):

"[OFFICER SPITLER:]   Did you get all of your questions answered?

"[DEFENDANT:]   Please don't talk to me.

"[DEFENDANT:]   If you were a nice officer like my father, I would respect you. [Approximately two minutes of silence.]

"[OFFICER SPITLER:]   Are your eyes brown?

"[DEFENDANT:]   Says it on my license.

"[OFFICER SPITLER:]   Says your, it doesn't give hair and eye color.

"[DEFENDANT:]   It does.

"[OFFICER SPITLER:]   What's that?

"[DEFENDANT:]   It does, on my license, does it not?

"[OFFICER SPITLER:]   No. It just gives height and weight. In Oregon—some states it will give you like eye color and hair color.

"[DEFENDANT:]   Didn't you look, you saw them the whole time I was doing your test?

"[OFFICER SPITLER:]   What apartment do you live in? Which one? [Defendant], what's your apartment number? What apartment do you live in?

"[DEFENDANT:]   I refuse to answer.

"[OFFICER SPITLER:]   You're not gonna give me any, you don't, what's your phone number?

"[DEFENDANT:]   *I'd like to have an attorney.*

"[OFFICER SPITLER:]   *Well these aren't the questions that you can really avoid by using, you would like an attorney.*

"[DEFENDANT:]   That's ok. I still would like one. [Because] you're not very nice. If you were nicer I would answer you. If the other gentleman asked me I would answer him.

"[OFFICER SPITLER:]   Ok.

"[DEFENDANT:]   How old are you?

"[OFFICER SPITLER:]   Why do you ask?

"[DEFENDANT:]   [Because] you just started the force. And you're not very nice. My dad worked for 40 years for the Portland Police and wasn't as rude as you were.

"[OFFICER SPITLER:]   I'm sorry you feel that way.

"[DEFENDANT:]   That's ok, it doesn't matter really, does it? [Approximately one minute of silence.]

"[OFFICER SPITLER:]   Do you want me to buckle you in or are you going to be ok?

"[DEFENDANT:]   No, I'm ok.

"* * * * *

"[DEFENDANT:]   Where are you going?

"[OFFICER SPITLER:]   We're going to the jail.

"[DEFENDANT:]   Where's the jail?

"[OFFICER SPITLER:]   It's in Hillsboro.

"[DEFENDANT:]   Are you kidding me?

"[OFFICER SPITLER:]   No.

"[DEFENDANT:]   You're not going to Tigard?

"[OFFICER SPITLER:]   No, I usually go there but we had somebody in one of our jail cells break a sprinkler head.

"[DEFENDANT:]   Yeah?

"[OFFICER SPITLER:]   And it flooded all our holding cells.

"[DEFENDANT:]   Yeah?

"[OFFICER SPITLER:] So we can't go there because they're renovating all of it.

"[DEFENDANT:] No shit! Really?

"[OFFICER SPITLER:] So, yeah, I have to go out to Washington County for all of this.

"[DEFENDANT:] Oh my god.

"[OFFICER SPITLER:] Okay?

"[DEFENDANT:] Yeah, ok.

"[OFFICER SPITLER:] Really warm in here. Do you want your window down or anything?

"[DEFENDANT:] I'm ok, I'm alright.

"[OFFICER SPITLER:] Let me know if you need the window down, ok, if you need fresh air. This car, all the police cars can get pretty warm.

"[DEFENDANT:] *You know what the sad thing is?*

"[OFFICER SPITLER:] *What do you mean?*

"[DEFENDANT:] *You know what the sad thing is? I dro—, I drank at my own apartment complex tonight.*

"[OFFICER SPITLER:] *Okay.*

"[DEFENDANT:] *And I drove from one apartment to the outside apartment.*

"[OFFICER SPITLER:] *Oh really?*

"[DEFENDANT:] *I didn't even drive on a street!*

"[OFFICER SPITLER:] But unfortunately the law applies."

(Emphases added.) In the conversation that followed, defendant made numerous incriminating remarks as she and Spitler discussed why she had driven instead of walked, her drinking habits, and the circumstances surrounding her drinking that evening. A breath test administered at the jail indicated that defendant's blood alcohol content was 0.16. Defendant was charged with DUII.

Before trial, which was tried on stipulated facts, defendant moved to suppress her statements to Spitler on the grounds that they were obtained in violation of her

rights to counsel and against compelled self-incrimination under Article I, section 12, of the Oregon Constitution,[2] and the Fifth Amendment to the United States Constitution.[3] The trial court denied the motion, concluding that defendant received *Miranda* warnings, understood her rights, and voluntarily waived those rights by initiating conversation with the police. With respect to Spitler's statement that defendant could not avoid certain questions by invoking her right to an attorney, the court reasoned that Spitler was merely stating that the particular questions he was asking did not fall under the purview of the *Miranda* protections.[4] Although it did not state so expressly, the trial court appeared to be referencing what is commonly known as the "booking question" exception, under which questions normally attendant to arrest and custody—including those needed to secure the biographical data necessary to complete booking services—fall outside the scope of *Miranda. See State v. Boyd*, 360 Or 302, 312, 380 P3d 941 (2016) (discussing exception); *see also Pennsylvania v. Muniz*, 496 US 582, 110 S Ct 2638, 110 L Ed 2d 528 (1990) (plurality opinion) (recognizing "routine booking question" exception under the federal constitution). Because questions regarding a defendant's hair color, eye color, and address usually qualify as booking questions, replies

---

[2] Article I, section 12, of the Oregon Constitution provides, in part:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

[3] The Fifth Amendment to the United States Constitution provides, in part:

"No person shall * * * be compelled in any criminal case to be a witness against himself."

[4] Specifically, the trial court remarked:

"[W]hen [Spitler] asked [defendant] things about eye color and apartment number, and then she says, 'I refuse to answer.' I understood that part of what he was saying is this, because, *obviously, when she invokes her right to have an attorney, if she does that, then she doesn't have to answer questions.* But I think that what [Spitler] was asking is—the point he was making is, 'Either here or at booking, you're going to have to say who you are.' *So these aren't the kind of questions that you would get a lawyer for.*"

(Emphases added.) Although somewhat unclear, we do not take the trial court's statement to mean that it found that Spitler's statement suggested to defendant that she was *required* to answer his questions. Rather, the trial court's statement appears to acknowledge that, under the "booking question" exception to *Miranda*, Spitler could continue to ask those kinds of questions despite defendant's request for an attorney. *See United States v. Foster*, 227 F3d 1096, 1103 (9th Cir 2000) (explaining that, under the "booking question" exception, "limited, biographical questions are permitted even after a person invokes his or her *Miranda* rights").

to such questions are admissible even if a defendant previously invoked his or her *Miranda* rights.

On appeal, defendant contends that the trial court erred in denying her motion to suppress in two interrelated ways. First, defendant argues that, although she initially received constitutionally adequate *Miranda* warnings, those warnings were rendered constitutionally inadequate by a statement Spitler later made. Defendant points out that, after Spitler *Mirandized* her, the officer later told her that she could not avoid answering certain questions by asking for an attorney. Defendant agrees that it is "reasonably clear" that Spitler was referring to the "booking question" exception to *Miranda*. However, according to defendant, Spitler's statement undermined the *Miranda* warnings previously given and rendered her later statements in response to interrogation involuntary. Defendant also argues that the trial court erred when it concluded that defendant knowingly, intelligently, and voluntarily waived her rights by reinitiating conversation with the police. Defendant concedes that she initiated a discussion of the crime with Spitler. Defendant nevertheless contends that, under the totality of the circumstances—including the purportedly inadequate *Miranda* warnings, defendant's intoxication, and Spitler's failure to clarify whether defendant wanted to waive her rights—no waiver occurred.

We review the denial of a motion to suppress for legal error, deferring to the trial court's findings of historical fact if they are supported by constitutionally sufficient evidence in the record. *Ehly*, 317 Or at 75. "If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *Id.*

We address the *Miranda* issue first. Generally, we consider questions of state law before reaching federal constitutional claims. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983). However, because our case law under Article I, section 12, has relied heavily on federal Fifth Amendment doctrine, in conducting our analysis under the

Oregon Constitution, we consider analyses under the Fifth Amendment as persuasive, albeit not binding authority. *See generally State v. Boyd*, 360 Or 302, 309, 380 P3d 941 (2016).

To protect a person's right against compelled self-incrimination under Article I, section 12, before interrogating a person in custody, police must provide the person with the same type of warnings that are required by the Fifth Amendment under *Miranda v. Arizona*, 384 US 436, 473, 86 S Ct 1602, 16 L Ed 2d 694 (1966). *See State v. Quinn*, 112 Or App 608, 612-13, 831 P2d 48, *rev den*, 313 Or 627 (1992). Under both the state and federal constitutions, a defendant's right to the assistance of counsel during custodial interrogation derives from his or her right against self-incrimination. *State v. Meade*, 327 Or 335, 339, 963 P2d 656 (1998) (explaining that "a lawyer's presence at a custodial interrogation is one way to ensure the right to be free from compelled self-incrimination"). Police are required to provide *Miranda* warnings before conducting such questioning to ensure that a suspect is aware of both of those rights. *State v. Cazarez-Hernandez*, 280 Or App 312, 314, 381 P3d 969 (2016); *State v. Scott*, 343 Or 195, 200, 166 P3d 528 (2007) (warnings are required due to the "inherent level of coercion" that exists in custodial interrogation (quoting *State v. Joslin*, 332 Or 373, 380, 29 P3d 1112 (2001))). To give effect to those rights, when police fail to provide the requisite warnings, the state is precluded from using statements made in response to the interrogation. *State v. Vondehn*, 348 Or 462, 474, 236 P3d 691 (2010).

Under *Miranda*, a person who is held for interrogation must be "clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation," and that "a lawyer will be appointed to represent him" if he is indigent. 384 US at 471, 473. The Supreme Court has subsequently made clear that "no talismanic incantation" is required to satisfy the strictures of *Miranda*. *California v. Prysock*, 453 US 355, 359, 101 S Ct 2806, 69 L Ed 2d 696 (1981); *see also Duckworth v. Eagan*, 492 US 195, 109 S Ct 2875, 106 L Ed 2d 166 (1989) ("Reviewing courts * * * need not examine *Miranda* warnings as if construing a will

or defining the terms of an easement."). Rather, the inquiry is simply "whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." *Duckworth*, 492 US at 203 (internal quotation marks and brackets omitted); *see also Quinn*, 112 Or App at 616 ("The substance of the warnings, not the exact words, determines whether the warnings are adequate.").

Defendant cites a handful of decisions as support for her contention that Spitler failed to give her adequate *Miranda* warnings because his initial warnings, though adequate, were nullified or undermined by his subsequent statement that she could not "avoid" certain types of questions. *See, e.g., Prysock*, 453 US at 360 (considering whether warnings provided to a suspect in custody adequately conveyed his rights to appointed counsel prior to and during interrogation); *Quinn*, 112 Or App at 611 (same). Those cases and others have held that, to be constitutionally adequate, *Miranda* warnings cannot mislead a suspect into believing that his or her right to counsel is conditioned on a future event, or convey a limitation on the right to counsel that would obfuscate an otherwise adequate set of warnings. *See, e.g., Doody v. Ryan*, 649 F3d 986, 1003 (9th Cir 2011) (*Miranda* warnings were constitutionally deficient where the defendant was informed that he had a right to counsel "if" he was involved in a crime); *United States v. Garcia*, 431 F2d 134, 134 (9th Cir 1970) (warnings inadequate where the defendant was told that she could have an attorney appointed to represent her "when she answered any questions" and when she "first appear[ed]" before court); *People v. Bolinski*, 260 Cal App 2d 705, 720, 723, 67 Cal Rptr 347, 356, 359 (1968) (two separate sets of warnings were inadequate where the first advised that counsel would be appointed "if [the defendant] was charged" and the second advised that the court would appoint an attorney once the defendant was moved to a different location). *But see Duckworth*, 492 US at 197-98 (upholding *Miranda* warnings that, in relevant part, communicated the right to have an attorney present before and during questioning, the right to an appointed attorney, and the right to stop answering questions at any time, but also informed the suspect that the police had "no way of giving [the suspect] a

lawyer" and that a lawyer would be appointed "if and when [the suspect goes] to court").

Such defects are not present here. As noted, defendant was initially warned that she had "the right to talk to a lawyer," to "have him or her present with [her] while [she was] being questioned," and that, if she could not afford to hire a lawyer, one would be appointed to represent her before questioning. Those warnings sufficiently communicated defendant's right to an attorney before and during interrogation. The record reflects that defendant understood those warnings when they were administered and that those warnings were not conditioned. Further, Spitler's later statement—"Well these aren't the questions that you can really avoid by using, you would like an attorney"— neither directly contradicted Spitler's warning of her right to counsel nor conditioned the right to counsel on some later event. *See generally State v. Martin*, 228 Or App 205, 209-10, 206 P3d 1176 (2009) (officer's statement that the defendant "needed to be honest," made after the defendant was provided with *Miranda* warnings, did not conflict with or nullify the defendant's right to remain silent). We also note that defendant was not deterred from continuing to assert her rights; in response to Spitler's statement, defendant insisted that she "still would like [an attorney]." In short, we conclude that Spitler's isolated statement would not have obscured the warnings that had been clearly given and that defendant said she understood.

Based on the foregoing, we conclude that defendant was provided with constitutionally adequate *Miranda* warnings. Accordingly, we turn to defendant's contention that she did not effect a valid, post-invocation waiver of her rights by initiating a discussion of the investigation.

In determining whether the police violated defendant's right against self-incrimination and the right to counsel, our analysis focuses on three points: "(1) whether the suspect was subject to custodial interrogation; (2) whether the suspect invoked the right to counsel in an equivocal or an unequivocal manner; and (3) in some cases, whether the suspect waived a prior invocation of the right to counsel." *Scott*, 343 Or at 200-01. The parties dispute the third

point but neither the first point—defendant was in full custody when she was questioned[5]—nor the second point—defendant unequivocally invoked her right to an attorney. That is, they contest whether defendant validly waived that right by voluntarily reinitiating discussion with the police.

Fundamental to protect the derivative right to counsel is that, when a suspect in custody makes an unequivocal request to speak with a lawyer, all police interrogation must cease. *Meade*, 327 Or at 339; *State v. Montez*, 309 Or 564, 572, 789 P2d 1352 (1990) (explaining that the rule protects "a suspect in custody from being 'badgered' by the police" (quoting *Oregon v. Bradshaw*, 462 US 1039, 1044, 103 S Ct 2830, 77 L Ed 2d 405 (1983))). However, after a suspect in custody has asserted the right to counsel, "the suspect remains free to waive that right by initiating further contact with the police." *State v. Acremant*, 338 Or 302, 322, 108 P3d 1139, *cert den*, 546 US 864 (2005); *State v. Kramyer*, 222 Or App 193, 197-99, 194 P3d 156 (2008) (driver's continued attempts to complete field sobriety tests after unequivocally invoking his right to counsel reinitiated the interaction with the police, thereby permitting officers to further question him); *Edwards v. Arizona*, 451 US 477, 484-85, 101 S Ct 1880, 68 L Ed 2d 378 (1981) (an accused who has expressed a desire to deal with the police only through counsel cannot be subject to further interrogation by the authorities until counsel has been made available "unless the accused himself initiates further communication, exchanges, or conversations with the police"). To demonstrate that a suspect has waived a prior invocation of the right to counsel, the state must show not only that the suspect initiated communication with the police in a way that "evinced a willingness and a desire for a generalized discussion about the investigation" but also that the suspect's waiver was knowing and voluntary under the totality of the circumstances. *Meade*, 327 Or at 340-42 (describing two-step inquiry); *see also Edwards*, 451 US at 486 n 9 (whether a valid waiver of the right to counsel

---

[5] It is also clear that defendant was subject to interrogation. The arguments made by the parties on appeal do not require us to determine the precise point at which interrogation began except to note that interrogation did not occur until *after* defendant initiated a discussion of the investigation with the police. *See Boyd*, 360 Or at 314-18 (defining "interrogation").

and the right to silence has occurred is assessed "under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities"). "A suspect who does not understand the rights conveyed to him or her by the *Miranda* warnings has not validly waived them." *Cazarez-Hernandez*, 280 Or App at 314.

Defendant concedes that she initiated the conversation with Spitler in which she made the incriminating remarks. Defendant argues, however, that no valid waiver occurred under the totality of the circumstances because any such waiver was not knowing and voluntary due to the purported inadequacy of the *Miranda* warnings that she received, her intoxication, and Spitler's failure to re-*Mirandize* her or to clarify her intention to waive her rights. *See Acremant*, 338 Or at 321 ("To be valid under both the state and federal constitutions, a waiver of the right to counsel must be knowing, intelligent, and voluntary under the totality of the circumstances."). We disagree.

Defendant was read her *Miranda* rights immediately upon arrest. As explained above, those warnings were constitutionally adequate. Moreover, the trial court specifically found that defendant understood her rights, and the court's finding is supported by evidence in the record, which shows that defendant began reciting her rights as Spitler read them and responded affirmatively when Spitler asked if she understood them. *See State v. Corona*, 60 Or App 500, 505, 655 P2d 216 (1982) ("Whether defendant actually understood the warnings given to him is a historical fact, and we are bound by the trial court's finding if supported by the record." (Internal citations omitted.)).

As to voluntariness, the trial court found that, despite having verbally invoked her right to an attorney, defendant thereafter repeatedly engaged Spitler in conversation. The record supports that finding. The trial court also specifically found that, throughout the interaction, Spitler was patient, polite, and professional. The record supports that finding as well, and reflects no threats or promises by Spitler, or any statement encouraging defendant to speak about the events at issue before defendant initiated the

discussion. To the extent that defendant argues that Spitler should have reminded defendant of her *Miranda* rights before engaging in the conversation that she initiated, we disagree. Only a few minutes had passed since the first *Miranda* warning was given. Nothing occurred in that time period that would have changed defendant's understanding of her rights so as to require Spitler to administer new warnings, or to clarify defendant's understanding of those warnings previously given.

Finally, we reject defendant's contention that her statements were rendered involuntary due to her intoxication. Whether a waiver was involuntary due to intoxication involves questions for the trial court and is resolved under the same analysis as courts apply to the voluntariness of a confession: "The proper inquiry * * * is whether by reason of *extreme* intoxication a confession cannot be said to be the product of a rational intellect and a free will." *Corona*, 60 Or App at 506 (emphasis in original; internal quotation marks omitted). Although the trial court in this case made no specific findings with regard to defendant's level of intoxication at the time of the waiver, the court found that defendant's statements were "clearly voluntary." Based on the evidence in the record, including the recording of the interaction,[6] which we have reviewed, there was sufficient evidence from which the trial court could have reached that conclusion.[7]

Affirmed.

---

[6] The recording reveals that, despite being visibly upset, defendant was coherent, responsive, and able to carry a conversation at all times.

[7] Because the analysis of defendant's claims under the Fifth Amendment is substantially the same as under Article I, section 12, we do not conduct a separate analysis under the federal constitution.